STATE of Missouri, Respondent,

v.

Lee Anderson CODY, Appellant.

No. 50100.

Supreme Court of Missouri,

Division No. 2.

June 8, 1964.

Charles L. Edson, St. Louis, for appellant.

Thomas F. Eagleton, Atty. Gen., Jeremiah D. Finnegan, Asst. Atty. Gen., Jefferson City, for respondent.

PRITCHARD, Commissioner.

Defendant, Lee Anderson Cody, who was also known by the nickname "Tooky," was convicted by a jury of the crime of assault with intent to do great bodily harm without malice upon one Erline Reed. It having been alleged in the indictment and stipulated by the parties that defendant had a previous felony conviction, the court assessed his punishment at four years in the Missouri

State Penitentiary under the Habitual Criminal Act, Section 556.280 RSMo 1959, V.A. M.S. After defendant's motion for new trial was overruled, allocution was granted, judgment of conviction was entered and he was sentenced to four years' imprisonment in the Department of Corrections. From the time of his arraignment through this appeal defendant has been represented by able and diligent court-appointed counsel, and defendant was allowed to appeal to this court as a poor person.

The events which preceded the assault in question by defendant upon Erline Reed involved several visits at intervals by defendant at the home of Bessie Reed at 3864 Kennerly in the City of St. Louis on Friday, October 19, 1962. During the last visit, which was about seven o'clock in the evening, they had a couple of drinks during an hour, then Erline gave defendant some money to go and get some more to drink. Defendant left and was gone about forty-five minutes, and when he came back he and Bessie got into an argument about the whiskey after Bessie had asked him to give the drink to her and Erline had called from the kitchen of the apartment for defendant not to open the bottle. Defendant would not give the bottle to Bessie, so she tried to take it away from him. Defendant threw the bottle of whiskey on the couch and knocked Bessie down with a blow on the chin, then got on top of her and held her down. Bessie's two sisters, Erline and Lily Reed and the "common-law husband" of Erline, Henry Macon, came in, pulled defendant off of Bessie, and Erline asked defendant to leave. When defendant got outside the door he pushed Erline down in the mud and said he was going to get a gun and kill all of them.

Erline Reed testified that after defendant left her home upon her orders, he later returned walking rapidly toward her and holding what looked like a stick under his right arm. Defendant started as though he intended to come into the house, Erline told him not to come in, and defendant then struck her across her left ear, face and head with the object he was carrying. Erline fell, but did not hear a shot. She was taken to the hospital where her left ear was sewed up and where she remained until Sunday. On October 28, 1962, she saw defendant at the police station where he was questioned in her presence. At that time defendant stated that he had struck her with the gun.

Queen Ester Reed, Erline's sister, testified that she heard defendant say he was going to get a gun and come back and shoot all of them, and that she saw defendant approach and hit Erline with a gun. She heard a sound from the gun and saw a spark. The barrel from the gun (State's Exhibit 2) fell to the sidewalk. At the time Queen Ester saw nothing in the hands of any other persons present.

Patrolman Thomas Mooney testified that he assisted in the defendant's arrest at 3642 Cottage on October 28, 1962, at which time defendant said his name was Lee Williams. Later defendant admitted his name was Cody, and that he had hidden the stock of the gun (State's Exhibit 1) on top of a roof across the street, at 2504 North Spring. Defendant took the officers to where the gun stock was and they found it with the trigger mechanism of the gun attached. After being booked defendant told the officers that he had hit Erline Reed with the gun, and identified the two pieces thereof as the one he had used. Defendant said he had obtained the gun at 3705 Cote Brilliante. The testimony of patrolman William Donough was substantially the same as that of Mooney.

Detective Milton Haupt picked up the barrel of the rifle, State's Exhibit 2, from the ground up the street about six houses from the scene of the assault. Defendant told the officers that when he struck the girl with the rifle it broke in half and he ran with the stock portion thereof, the barrel being left at the scene.

Defendant, in testifying, stated that on the evening in question Bessie did try to

take the liquor from him and that he resisted. She pushed him against the wall and kept coming. He put the bottle aside on the couch and held her at which time she started kicking over the chairs and everything. Erline and Henry Reed (Macon) came in, and Erline grabbed him around the neck and was biting his face, so he pushed the crowd back and Henry opened the door and "snatched" him to the outside. Erline then had a knife and a hammer and was trying to come up behind defendant. She told defendant she was going to kill him, and he told her he was going to "kill her back." There were four persons, according to defendant, outside the building: Henry Macon, Erline Reed, Bessie Reed and Cora McEntire. Everybody was coming toward him so he jumped back and went around the corner and said, "I'll go get me something, too, to fight for me." Defendant then went over to his cousin's house at 3600 Cottage and got the gun which was not loaded and which he did not load, although he testified that he asked a person at that place if he had some bullets. Defendant then came back and saw the four by his car which he had previously parked in front of Erline's house. He crossed over the street to keep them from seeing him and sat down on some steps right across the street from the house. The four apparently saw someone coming down the street who resembled defendant and they started calling his name, and calling a whole lot of names, so defendant stepped out into the street. Erline said, "Come on. That gun won't shoot but one time." She had a knife in her right hand and a hammer in her left. He knew that Erline had a violent temper and that she generally carried a knife. When defendant got a couple of feet onto the curb he saw Erline coming at him with a hammer and the knife which had about a four inch blade. He then brought one hand up with the gun, which went between her arms and "smacked" her and the gun broke. Defendant backed up; Cora Reed picked up a piece of iron, ran at him and threw

it at him; Henry Macon bent down to see how Erline was, picked up the knife and ran up to the lamppost where defendant had stopped, and told defendant he was going to kill him; defendant told him, "come on" and Henry started swinging the knife at him almost up to the corner where they blocked the cars; and by this time the police were coming around the corner. Defendant testified further that he knew the police were after him for a nine-day period, and that he did give the police the wrong name at the time of his arrest. He testified that he had a room for himself at 3705 Cote Brilliante.

On rebuttal, patrolman William Donough testified that during his interrogation of defendant he did not at any time state that he had obtained the gun at 3600 Cottage but that the address given by defendant as to where he got the gun was 3705 Cote Brilliante; he did not tell him that Erline Reed came at him or attacked him on October 19 with a knife or a claw hammer in her hand; or that anyone else had tried to attack or in any way injure him. Patrolman Mooney substantiated the foregoing in rebuttal testimony.

■ The above recital of the facts, which the jury could have reasonably found, establishes that defendant's first point that the state did not make a submissible case because the evidence of intent was lacking is without merit. There was ample evidence that defendant, just after the first altercation, formed the requisite intent to do bodily harm to his victim and carried that intent through the act of the assault. He left, went to his room and procured his rifle and returned with it to Erline's house where he proceeded to strike her with it, and did inflict an injury upon her. In State v. Holmes, Mo., 364 S.W.2d 537, cited by defendant, the facts showed defendant twice turned his automobile into that of the prosecuting witness, Solomon, forcing it into a ditch. Solomon then got out of his automobile, walked over to defendant's car to speak to him and defendant

struck Solomon with his fist knocking him down to the wet ditch where he proceeded to kick and stomp the head, arms and body of Solomon who offered no resistance. The court did say, loc. cit. 540, "Since the crime charged is assault 'with intent to do great bodily harm,' the intent to do great bodily harm must be present at the time of the act of assault," but the court went on to hold that the state made a submissible case upon the facts showing that the defendant twice deliberately caused his automobile to strike that of Solomon, intending to do great bodily harm, such intention being supported by his continuation of the assault by the brutal beating and kicking of Solomon. Defendant also cites State v. Chevlin, Mo., 284 S.W.2d 563, 566, that "The intent, by express words, is made an essential element of the offense and must be proved." That is the law. The court, however, in the Chevlin case went on to say, "It is the unusual situation when there is direct evidence of the intent of a person charged with a crime such as here. Intent may and generally must be established by circumstantial evidence, for as a rule it is not susceptible of direct proof." We hold that the evidence that defendant, in leaving Erline's home with the statement, "I'll go get me something, too, to fight for me," then going to his room, getting the rifle, and later approaching Erline, even if at her invitation, where he struck her on the left side of the head inflicting an injury sufficient to hospitalize her, was sufficient for the jury to find that defendant formed, continued to have, and had present at the time of the assault, the requisite intent to do great bodily harm. Sections 559.180, 559.-190 RSMo 1959, V.A.M.S. The evidence, although contradictory in some respects, was for the jury, and the same was not as contended by defendant "inherently incredible, self-destructive, or opposed to known physical facts" which if so would authorize this court to reverse defendant's conviction in accordance with his cited case of State v. Gregory, 339 Mo. 133, 96 S.W.2d 47. Defendant's Point I is ruled against him.

Prior to the trial defendant moved to produce the conviction records of the witnesses endorsed on the indictment. These were produced upon subpoena directed to the Metropolitan St. Louis Police Department. Defendant also at this time orally requested the warrant office statements (meaning a question and answer statement given by witnesses in the circuit attorney's office where warrants for arrest are issued) of the prosecution witnesses for the purpose of impeachment on cross-examination, and he renewed the oral request during the trial upon the cross-examination of witness Bessie Reed. At the conclusion of the trial and after the verdict was rendered, defendant again orally moved for the production of the warrant office statements of the prosecution witnesses, and in support of the oral motion called to the witness stand Mr. Daniel T. Tillman, a lawyer currently employed in the St. Louis Circuit Attorney's office. Mr. Tillman testified that the procedure in the preparation of warrant office statements was this: After an arrest of a subject and usually within twenty hours the police officers present the police report and witnesses to the warrant office of the circuit attorney. At that time the assistant will read over the police report, talk with the witnesses, and determine if there is sufficient evidence to warrant issuing an information in the case. If the assistant feels there is probable cause and sufficient information, the office will issue a warrant and at that time witnesses will give a question and answer statement to the assistant circuit attorney in the Circuit Attorney's office. The case may then be sent to the Circuit Court by information, or it may be referred to the Grand Jury for indictment. The instant warrant office statements were taken by Mr. Robert Mc-Nicholas, an assistant circuit attorney, with Mrs. Kay Marshall, a stenographer, in question and answer form, of Erline Reed, Bessie Reed, Patrolman William Donough,

Queen Ester Reed and Cora McEntire, consisting of nine pages. Upon request made to Mr. Tillman by Mr. Edson, defendant's counsel, to produce these statements he declined, but he did state he had them in court, and he did give them to the judge after which the court stated into the record that he had read them, and that he concluded that there was no reason for ordering the circuit attorney, or the witness Mr. Tillman, to turn the document over to counsel for defendant at that time. The court ordered the document be marked "Court's Exhibit OHJ – Alpha," enclosed in a sealed envelope, and forwarded to this court, and we now have the document before us. Counsel for defendant has never seen this document and by Point II he assigns as error the failure of the trial court to supply him therewith for his stated purpose of impeachment on cross-examination of the witnesses testifying. The statements were not used during the trial by any witness for the purpose of refreshing recollections. At the time during the trial when counsel requested the statements, after the examination in chief of witness Bessie Reed he did not state any grounds therefor.

 As noted, each of defendant's requests for the warrant office statements of the testifying witnesses was *oral*. If defendant is contending that he is entitled to proceed under Supreme Court Rule 58.01, V.A.M.R. (for the production of documents in civil cases) that procedure would avail him nothing because that rule by its reference to Rule 57.01(b) excludes an inquiry as to contents or substance of statements, written or oral, on behalf of another party. If defendant is contending that he is entitled to proceed under Section 510.030 RSMo 1959, V.A.M.S., for the production of the documents, he has failed to bring himself within that statute by compliance with its terms requiring a showing of good cause therefor. See State v. Redding, Mo., 357 S.W.2d 103, 109 [17]; State v. Kelton, Mo., 299 S.W.2d 493,

497 [8, 9]. Defendant did not use the procedure which is prescribed by Supreme Court Rule 25.19, V.A.M.R., for the issuance of a subpoena duces tecum for the desired documents. The procedure under the latter rule would give to the state the opportunity to move to quash or modify such subpoena upon the ground that "compliance would be illegal, unreasonable or oppressive," and which procedure would seem to be the correct one in the situation such as here presented. We cannot see any practical reason, legal or strategic, why the state should not have produced the desired statements and thus have eliminated the controversy thereover. See State v. Crayton, Mo., 354 S.W.2d 834, 838, where it was said, "After all, the ultimate purpose of a criminal trial is to procure substantial justice and not merely to convict the defendant." However, we cannot convict the trial court of error for his failure to order the production of the documents in the absence of appropriate procedure therefor. See annotation, "Want of Proper Procedure for Production" (of contradictory statements), 156 A.L.R. 353. Point II is ruled against defendant.

 By Point III, defendant contends that there was no evidence to warrant the court giving Instruction 5–A, the "flight instruction." There is no merit in this contention, and it is ruled against the defendant. The evidence shows that defendant fled from the scene; that he did not return to his place of residence; that he was in concealment from the place at a place other than his regular abode, knowing for nine days that the police would be looking for him by reason of the offense; and he gave a false name at the time of his apprehension. These facts justify the giving of Instruction 5–A. See State v. Cochran, Mo., 366 S.W.2d 360, 362 [3, 4], and cases and authority there cited and quoted.

We have examined the matters specified by our Rules 28.02 and 28.08, V.A.M.R.,

and we find no error. The judgment is affirmed.

BARRETT and STOCKARD, CC., concur.

PER CURIAM:

The foregoing opinion by PRITCHARD, C., is adopted as the opinion of the Court.

All of the Judges concur.