STATE of Missouri, Respondent,

v.

James MADDEN, Appellant.

No. 51076.

Supreme Court of Missouri,

Division No. 1.

Oct. 11, 1965.

Norman H. Anderson, Atty. Gen., Jefferson City, Stanley D. Rostov, Sp. Asst. Atty. Gen., Kansas City, for respondent.

Richard D. Moore, Newton C. Brill, West Plains, for appellant.

HENLEY, Judge.

Defendant was charged by information with burglary, second degree, and stealing, and, under the Habitual Criminal Act, with a prior felony. Sections 560.070, 560.110, 560.156. (Statutory references are to RSMo 1959 and V.A.M.S.) A jury found him guilty of burglary and stealing. Upon a finding by the court of the prior felony conviction, he was sentenced to a term of five years in the penitentiary for burglary and five years for stealing, the two sentences to run concurrently. Section 556.-280. His motion for new trial was overruled and he appeals.

A brief description of the case will suffice, for defendant does not question the sufficiency of the evidence to sustain his conviction of burglary and stealing. In the course of this opinion such evidence will be related as is pertinent to each of the four points relied upon by defendant for reversal.

Somewhere between 1:00 and 4:00 o'clock, A.M., on Sunday, July 21, 1963, the Golden Nugget Tavern owned and operated by one Troy Vest between Thayer and Koshkonong on U. S. Highway 63 in Oregon County was broken into, entered, and merchandise and approximately $100 in money stolen therefrom by two men identified as the defendant, James Madden, and Bobby Jackson, a farmhand of defendant. Bobby Jackson testified that it was he and defendant who broke into the Golden Nugget and stole the property of Troy Vest. Defendant contends that it was not he but Houston Jackson, a brother of Bobby, who was Bobby's accomplice in this burglary. He also claims (1) that Bobby implicated him (defendant) to protect Houston, and (2) that Bobby was promised leniency in a rape charge pending in Howell County if he would implicate defendant in the Oregon County burglary.

Amos Howell testified that he was driving his truck north on Highway 63 on the night mentioned when he became suspicious of the actions of a man in the Golden Nugget driveway. Passing the Golden Nugget, he drove up the highway, turned around and returned, this time driving slowly through the driveway. There he saw defendant and Bobby Jackson with filled burlap sacks in their hands. He then drove to Vest's home nearby and told him what he had seen. He and Vest left the latter's home in the Howell truck intending to go to the Golden Nugget, but enroute they saw Bobby Jackson and defendant in the latter's Chevrolet pickup truck and gave chase. In the course of the chase they got close enough to the Madden truck to identify the two occupants. After gunfire was exchanged between the occupants of the two trucks they discontinued the chase, and defendant and Jackson escaped.

This escapade and the later burglary had its beginning early Saturday evening shortly after defendant and Bobby Jackson arrived in West Plains. There they met Houston Jackson and with Houston and other friends they had a night on the town going from one tavern to another drinking beer and whiskey.

Defendant, by his own testimony, places himself in the area of the Golden Nugget during the time this burglary was being accomplished; in fact, he places himself in the presence of Bobby Jackson in the driveway of the tavern. He testified that in the course of the evening "we proceeded to get drunk" and the next thing he remembered was "seeing Houston slumped over the wheel sick"; that his truck was at that time parked on a side road about 300 yards from the Golden Nugget; that when he awaken-

ed Bobby was not in the truck, so he walked down the highway and to the Golden Nugget where he found Bobby in the driveway with two sacks, the one on his shoulder being "pretty full"; that he knocked one sack out of Bobby's hand and told him, "You will get in trouble here fooling around like this"; that he and Bobby left both sacks on the ground, returned to the truck, got in, and left with defendant driving. He further testified that they were almost to Koshkonong "when a pickup truck came in behind us"; that he thought the truck might be a highway patrolman so he turned off on country roads to dodge him because he did not want to be caught driving while drunk; that gunfire was exchanged between the two trucks; and, that he got home about daylight.

The first point briefed by defendant is: "The trial court erred in admitting into evidence State's Exhibits 'A' and 'B' in that said exhibits were not verified or authenticated as true copies." These exhibits were offered by the state in support of the charge under the Habitual Criminal Act. Section 556.280. Exhibit "A" purports to be a copy of a record of the Kansas State Industrial Reformatory showing, among other things, that a James Madden was imprisoned therein pursuant to sentence upon his conviction of burglary and larceny in October, 1954. This exhibit, a thermofax copy of the record, has been filed as a part of the transcript pursuant to a stipulation. It does not purport to bear the signature and attestation or seal of the keeper of such records and, therefore, fails to comply with Section 490.220. After Exhibit "A", the state next offered what was described by the prosecuting attorney as an authenticated copy of a record of the District Court of Ellsworth County, Kansas, and which was further described by him as containing "the conviction, sentence, committment and discharge of James Madden, where he was convicted of the crime of burglary in the second degree and larceny and duly sentenced and committed to the Kansas State Industrial Reformatory at Hutchinson, Kansas, showing also his committment, that he was paroled August 26, 1955, and discharged August 26, 1957." This is no doubt Exhibit "B" referred to in the transcript and the briefs, although not so identified at the time of the offering. As indicated, these exhibits were admitted in evidence over defendant's objection. His objection was two-pronged: that there was no showing that defendant and the James Madden described in the exhibits was one and the same person, and that the exhibits were not properly authenticated. Exhibit "B" is not furnished us as a part of the transcript. In oral argument before this court defendant's counsel stated that Exhibit "B" had the same failure of proper authentication as did Exhibit "A" and he excused the failure to produce "B" by stating that he had been unable to locate it.

There are three reasons why we cannot sustain defendant on the point he relies on as error in the admission of these exhibits.

First, the point now relied upon (that the exhibits were not verified or authenticated as true copies) was not preserved for review in this court. The only allegation of error in his motion for a new trial pertaining to these exhibits was that "* * * the state failed to show by independent proof of any kind whatsoever that the James Madden mentioned in State's Exhibits 'A' and 'B' was the same James Madden as the defendant on trial in the cause herein * * *." Defendant says this allegation is broad enough to include the point relied upon on appeal. The point was made as a part of his objection to the offering, but was abandoned and not preserved for review by his failure to call it to the attention of the trial court in his motion for a new trial. The allegation in his motion is not broad enough to include the point or reason relied on. There is a great deal of difference between an allegation of failure to identify defendant with the prior conviction of felony in Kansas and the allegation, now relied on, that the exhibits were not properly authenticated.

██ This court has said time and again that reasons or points in support of claimed error of the trial court, set forth in a brief but not raised in defendant's motion for a new trial are of no avail and not open to review on appeal. State v. Tellis, Mo., 310 S.W.2d 862, 865 [8] and cases there cited. The defendant was required by Supreme Court Rule 27.20(a), V.A.M.R. to state the point he now makes in detail and with particularity as a ground or cause for granting a new trial; having failed to do so he abandoned this point of his objection made at the time these exhibits were offered. Also see Section 547.030. We decline to hold the trial court in error for a reason and on a point not assigned and called to its attention in defendant's motion for a new trial. Also, having failed to brief the assignment in his motion that the state failed to prove that the James Madden described in the exhibits was one and the same as defendant, that point too is abandoned and deemed waived. For the above reasons the first point of defendant's brief is ruled against him.

██ Second, we decline to hold the trial court in error for the admission in evidence of an exhibit not produced in this court as a part of the transcript for our examination. There is nothing before us on which we could sustain this charge of error. It was defendant's obligation to furnish this exhibit as a part of the record on appeal. Supreme Court Rule 28.08; State v. Sarkis, Mo., 313 S.W.2d 723, 727 [9]. To say the least, there is no presumption the court errs when an exhibit is admitted in evidence, State v. Sarkis, supra, and Exhibit "B" was offered as an *authenticated* copy of a record entry of a District Court of Kansas and the court found that it was such a copy. It would be unusual to find a court record that would show all of the requirements of § 556.280, i. e., prior conviction, sentence and subsequent imprisonment or fine, parole or probation; usually such records show only the prior conviction and sentence, and possibly parole or probation. This record (Exhibit "B") is described in its offering

as showing not only that James Madden was "* * * sentenced [on his conviction of burglary in the second degree and larceny] and committed to the Kansas State Industrial Reformatory * * *" but as "* * * showing also his commitment, that he was paroled * * * and discharged * * *." This offering at least tended to show all of the requirements of Section 556.280. There was no attack on the exhibit during the trial that it did not show all the offer described. Surely, had it not shown subsequent imprisonment or parole, such lack would have been called to the attention of the court by the objection of counsel for defendant.

██ Third, we note that the name of the defendant is identical with that of the person described in the offering of Exhibit "B". We have held that the identity of names is prima facie evidence of identity of person and is sufficient to support a finding of such identity under the Habitual Criminal Act. State v. Reed, Mo., 298 S.W. 2d 426, 428 [6]; State v. Collins, Mo., 394 S.W.2d 368 opinion filed October 11, 1965. Also see cases cited in 11 A.L.R.2d 884, ¶ 7.

The second point relied on in defendant's brief is that "the trial court erred in refusing to declare a mistrial and to discharge the jury when the prosecuting attorney repeatedly inquired of Sheriff Raymond Burleson if 'anyone' had attempted to bribe him, as such was not a proper admission and was highly prejudicial to defendant and greatly inflamed the jury."

The repeated inquiries referred to by defendant, and the court's ruling on each, are as follows:

"Q  Sheriff, did you have anyone approach you in regard to this case to get to the prosecutor?

MR. MOORE [counsel for defendant]: Your honor, anything like that is highly prejudicial, prejudices this defendant.

THE COURT: The question as asked is objectionable. If you are objecting to the question it is sustained.

MR. MOORE: We would like to make a formal objection at this time to this line of examination. If this man has done anything like that he should be charged with an offense, and this line of examination pertaining to this witness is solely for the purpose of prejudicing the jury against the defendant, and the jury should be discharged, and a mistrial declared.

THE COURT: That request is overruled and the objection to the question is sustained. Do you have other questions of this witness?

Q (By Mr. Davidson) Were you approached at any time after the burglary and larceny at the Golden Nugget Tavern in Oregon County in regard to your official duties?

A Yes, sir.

Q State to the court and jury how you were approached—

THE COURT: First, the Court wants to know by whom he was approached before we get into that area.

Q Were you approached by the defendant or anyone related to the defendant in regard to the case?

MR. MOORE: Your honor, I object to that question because—

THE COURT: The objection is sustained.

MR. DAVIDSON: If I please the Court, Mr. Moore objected to everything stated here—

MR. MOORE: Your honor, I object to that statement by the prosecutor.

THE COURT: Gentlemen, I have ruled on the question that was asked and the objection was sustained and I intend for it to be that way. If you have other questions of this witness, or if you wish to rephrase that question, you may do so.

Q Sheriff, did anyone ever try to bribe you?

A Yes sir.

MR. MOORE: At this time, your honor, I am going to ask that a mistrial be declared. He is continually getting in this thing for the sole purpose of prejudicing this jury. It is highly irregular. It is a violation of this defendant's rights.

THE COURT: The objection will again be sustained. Mr. Davidson, if you please, I have ruled that you may not go into this thing except if the defendant himself has made an offer or approached this officer, then this evidence the court will permit you to show. If you do not have that evidence, let's discontinue this line of questioning. Let me say to the jury, the questions and answers that have been given here just the last few minutes concerning the matter which we are discussing, the jury will disregard all of the matter and not consider it in any way in arriving at your verdict in this case, because the court has ruled that evidence is not competent. Now, Mr. Davidson, if you have further questions, you may proceed.

MR. DAVIDSON: I have no further questions, your honor."

Defendant argues that while evidence that an accused on trial has attempted to fabricate or procure false evidence or destroy evidence against him is admissible as showing consciousness of guilt,[1] evidence that

1. State v. Smith, 355 Mo. 59, 194 S.W.2d 905, 907 [6–8]; Scrivner v. American Car & Foundry Co., 330 Mo. 408, 50 S.W.2d 1001 [29]; Fulkerson v. Murdock, 53 Mo.App. 151; State v. Christian, Mo., 245 S.W.2d 895, 898 [3].

someone or "anyone" else had done so is not admissible for any purpose. He says that these questions intimated that defendant, or someone at his direction, had tried to bribe the sheriff and invited the jury to infer, from such intimation, that defendant was conscious of his guilt of the charges for which he was on trial; that failure to follow up this intimation with proof that defendant had in fact tried to bribe the sheriff shows intentional unfair tactics on the part of the state's attorney prejudicial to the rights of defendant.

■ We do not condone these questions of the sheriff in the form they were put by the state's attorney. We are, however, inclined to the view that this record shows these questions were probably not the result of a conscious effort and an intent to be unfair with and to prejudice the rights of the defendant. Too, it is extremely doubtful that the jury could have inferred from these questions alone that which defendant concludes they did infer. The court sustained all objections of defendant to this line of questioning and specifically instructed the jury to disregard and not consider the matters raised by the questions and answers in arriving at their verdict, giving as its reason that: "The court has ruled that evidence is not competent." The court declined to declare a mistrial, apparently believing that its instruction that the jury disregard those matters was all the action that was required to protect defendant's rights. The court had two opportunities to consider whether these questions had likely prejudiced defendant in the eyes of the jury: at the time the questions were asked and again when presented in defendant's motion for new trial, and its rulings thereon indicate that it was of the opinion the action it had taken was adequate. The action required of the court under these circumstances must necessarily be left largely to the discretion of the trial judge. State v. Allen, Mo., 343 S.W.2d 63, 66 [4, 5]; State v. James, Mo., 347 S.W.2d 211, 214 [7]. We cannot say from the circumstances in this record that the court's action was

not adequate, nor can we say that the court abused its discretion. The point is ruled against defendant.

In points three and four of his brief defendant charges that the court erred in denying his request that a mistrial be declared and the jury discharged because of certain comments made by the prosecuting attorney in his closing argument.

Near the end of his closing argument the prosecuting attorney commented that three of defendant's witnesses were not present on the morning of the first day of the trial by stating: "Why weren't these three witnesses for the defendant here, why did they have to be sent after, why did they have to be put in jail?" The witnesses referred to were John and Lloyd Drumwright and Steve Light, all of whom were used as witnesses by the defendant. The record is not clear on this point, but it appears that they probably had been subpoenaed for an earlier trial date and when the case was continued to this date, the witnesses were to appear on notice from defendant without further subpoena. Whatever the reason, on the morning of trial date they failed to appear and an attachment was issued for them directed to the Sheriff of Howell County, their residence. Defense counsel objected to the above-quoted argument as being improper and prejudicial to the rights of defendant. In ruling the objection the court went further than requested and instructed the jury to disregard this portion of the argument, stating that there was no evidence to support the remark of the prosecuting attorney. The defendant, for the same reasons given in his objection, then asked that a mistrial be declared and the jury be discharged. Immediately after this request was denied, the prosecuting attorney, continuing with his argument, remarked: "If I was [counsel for defendant] I would object to everything too." After this remark was objected to, he closed his argument with the comment: "I am not going to try to talk anymore about this case at this time, because defense counsel has objected to everything that I started to say."

Needless to say, this final comment was followed by an objection.

 In point three of his brief defendant contends that the court should have sustained his request for a mistrial because the prosecuting attorney's comment that three defense witnesses had to be "sent after" and were "put in jail" was not supported by the record; that this comment was damaging and prejudicial to defendant because it intimated the witnesses were reluctant to testify and that they were not to be believed. There is no evidence that the three were placed in jail, but, as indicated, an attachment was issued to compel their attendance, and defendant states in his brief they were "brought into court by the law enforcement officers." Whether a particular comment in argument is so prejudicial under the facts of a case as to necessitate a discharge of the jury is largely within the discretion of the trial court. An appellate court will not interfere unless the record shows an abuse of such discretion to an appellant's prejudice. State v. Sanchez, Mo., 269 S.W.2d 46, 48 [2]; State v. Green, Mo., 292 S.W.2d 283, 288 [10]. As stated, the objection to this comment was sustained and the court instructed the jury to disregard the remark because it was not supported by the evidence. At this point, and again on motion for new trial, the court considered whether, under all the circumstances, the comment was so prejudicial to defendant that the court should have declared a mistrial, and concluded that that action was not warranted. We consider that the action taken by the court was sufficient, and that the court did not abuse its discretion in refusing to declare a mistrial. Point three is ruled against defendant.

In point four defendant contends that the court erred in not declaring a mistrial when the prosecuting attorney made his final comment in argument that "I am not going to try to talk anymore about this case * * * because defense counsel has objected to everything I started to say." There was no request that a mistrial be de-

clared because of this comment and absent a request for such action there was no error. Defendant did object to the comment and the court in effect sustained the objection by stating to the jury that the argument of counsel was not evidence; that the jury was to be guided by the evidence and not by the arguments. The court granted all the relief that was requested. The point is without merit.

We have examined those matters required to be reviewed under Supreme Court Rule 28.02, V.A.M.R., and find no reversible error therein.

The judgment is affirmed.

All concur.