**STATE of Missouri, Respondent,**

v.

**James Albert DENNISON, Appellant.
No. 52672.**

Supreme Court of Missouri,
Division No. 1.

June 10, 1968.

Norman H. Anderson, Atty. Gen., Jefferson City, Claude W. McElwee, Special Asst. Atty. Gen., St. Louis, for respondent.

Thomas R. Schwarz, St. Louis, for appellant.

STORCKMAN, Judge.

A jury found the defendant guilty of robbery in the first degree by means of a dangerous and deadly weapon. The state out of the presence and hearing of the jury proved a prior conviction of murder in the second degree and the court sentenced the defendant to imprisonment in the penitentiary for a period of 35 years. Section 556.280, RSMo 1959, V.A.M.S. The defendant's motion for new trial was overruled and he appealed. Since the sufficiency of the evidence is not questioned, a detailed statement of the facts proved is not required.

Maurice Hendin owned and operated Maury's, a drug, sundries and food store, at 2424 South 10th Street in the City of St. Louis. On May 6, 1966, between 7:30 and 8:00 p. m., he was robbed of an amount in excess of $250 by two men while he was alone in his store. The two men were later identified as the defendant Dennison and George Frank Lindner. When the robbers entered the store, Mr. Hendin was at a counter near the front entrance. The defendant remained at the front of the store, half-turned and looking toward the door. Lindner came around the counter, pushed a pistol in Mr. Hendin's ribs and forced him to go to the rear of the store where Lindner took money from the cash register,

from containers under the counter and out of Mr. Hendin's pocket. Lindner warned Mr. Hendin on several occasions that if he was good nothing bad would happen to him. Mr. Hendin pleaded with the robbers to leave some money for change but his request was refused. The only time the defendant said anything was when he told Lindner to leave Mr. Hendin in the rear portion of the store as they were about to depart. The robbers were in the store between five and eight minutes.

The defendant was identified at the trial as one of the robbers by Mr. Hendin and by Russell Talley who lived on the same street, a short distance from the store. Mr. Talley went to the store to make a purchase while the robbery was in progress. When he opened the door and started to enter, the defendant told him the store was closed and pushed the door shut. Mr. Talley made another attempt and was again refused entrance by the defendant who then turned a sign on the front door indicating that the store was closed. Mr. Talley returned to his home but remained on the front sidewalk talking to a neighbor. He saw the defendant and Lindner leave the store and get into a parked automobile. As the automobile passed his home, Mr. Talley again got a view of the defendant who was seated on the passenger side of the front seat. As the car passed, Talley stepped into the street to get the license number, but the plate was so dirty that he was able to discern only three digits.

Lindner was wounded and captured while engaged in another robbery several weeks later. He confessed participating in the robbery at Maury's store, and, according to to the state's evidence, Lindner gave the police information which led to the arrest of the defendant in Kansas City and his identification as one of the robbers. Lindner pleaded guilty to the robbery at Maury's as well as the one where he was captured; he was serving a sentence in the penitiary at the time of the defendant's trial. As the only witness for the defendant, he testified that the defendant was not his accomplice in the robbery of Maury's store. Other evidence will be referred to as it becomes pertinent.

■ The defendant's first contention is that the trial court erred in submitting to the jury over the defendant's objection verdict forms which constituted a comment on the evidence and violated provisions of Amendment 5 and Amendment 14 of the United States Constitution, and Art I, § 10, of the 1945 Constitution of Missouri, V.A. M.S., relating to due process and equal protection of the laws. The objection made was that the form for the verdict of guilty was in substantially larger type and heavier print than the form for a verdict of not guilty. We have been furnished with certified photocopies of the forms of verdict used. The guilty form is in larger and a different type than the other but apparently no heavier. The not guilty form is in smaller type but it is easily readable and the words "not guilty" are in italics which is a kind of type used chiefly to distinguish words for emphasis and importance. The forms as we view them do not by reason of their format create an invitation or temptation to use one in preference to the other. The obvious purpose is to distinguish between them so that the jury will not inadvertently use the wrong one in recording its verdict. No other means of accomplishing this proper purpose has been suggested which could not be subjected to the same sort of criticism as the defendant now makes. The use of colors could be made to appear even more objectionable.

In State v. Randolph, Mo., 39 S.W.2d 769, 773[4], cited by defendant, the trial court gave a form of verdict finding the defendant guilty as charged and assessing "her punishment by imprisonment in the penitentiary for a term of ———— years", another finding her guilty and assessing "her punishment by ————", and a third form finding her not guilty. The defendant contended this gave undue prominence to imprisonment in the penitentiary. The judgment was reversed on other grounds

and in remanding the cause the court stated that giving the three forms of verdict was subject at least to some of the defendant's criticisms and the procedure should not be repeated on retrial. The case does not support the defendant's contention in the present case. All of the instructions to the jury in this case properly refer to the standards to be observed by the jury in determining the defendant's guilt or innocence including the state's burden to prove guilt beyond a reasonable doubt. The last instruction concludes with this unmistakable admonition: " * * * you will bear in mind that it is your duty to be governed in your deliberations by the evidence as you understand it and remember it to be, and by the law as given by the Court in these instructions, and render such verdict as in your conscience and reason and candid judgment seems to be just and proper." No violation of constitutional guarantees has been demonstrated or other prejudice shown. The contention is denied.

The defendant's next contention is that the trial court erred in failing to declare a mistrial "when the State's witness Officer Bonson, on direct examination, volunteered the fact that the defendant and the confessed robber had become acquainted with each other in the penitentiary on a previous occasion." In the defendant's case the confessed robber, Lindner, had testified that his accomplice in the robbery at Maury's was not the defendant, but a gray-haired man named Harry about 45 years old whose last name he did not know; that he was interrogated by the police on six or seven occasions regarding his accomplice; that the police officers first brought up Mr. Dennison's name, and he, Lindner, told them although he was acquainted with Mr. Dennison, he was not the other robber, but when the officers continued to question him he got tired and finally told them to put down Abbie Dennison if that was what they wanted. On cross-examination Lindner testified that he had served a two-year term in the Missouri State Penitentiary beginning in 1954 and that he had known James Albert Dennison for 15 or 16 years and that they were just friends.

Police officer Robert Bonzon, one of the officers that interrogated Lindner and a witness for the state in chief, testified in rebuttal that he had never known or heard of James Albert Dennison prior to the time Lindner told him and his partner, officer Owens, that his accomplice was an old fellow he knew as Abbie Dennis. He further testified that he and officer Owens then went to police headquarters and searched the entire evening to the early morning hours in the files for any similar names and came up with the name of James Albert Dennison and a Police Department photograph of the defendant. There was no objection to the testimony regarding the police files and the police photograph. The following then occurred:

"Q Did you ask him where Abbie was? A He told us that Abbie he thought was originally from around Kansas City, and he knew Abbie previously from the penitentiary.

"MR. SCHWARZ: I am going to object to that and request the testimony be stricken and a mistrial declared.

"THE COURT: Ladies and gentlemen of the jury: That is a matter that you will not pay any attention to or base your verdict on—where he got acquainted in any manner at all. That isn't in this trial in any way. Just forget that that happened.

"MR. SCHWARZ: In order that the record may be clear, your Honor, I request that the jury be discharged and a mistrial declared.

"THE COURT: Is this going to prevent you folks from giving a fair trial and in the fair rendition of your verdict? If anybody feels that way, raise your hand.

"(No response to Court's question)

"THE COURT: We will go ahead. Go ahead."

In response to further questioning, officer Bonzon testified that Lindner told them the defendant might be staying at the Barclay Hotel in Kansas City or with a girl friend who operated a beauty shop.

In support of his claim that the court erred in not granting a mistrial, the defendant cites State v. Aubuchon, Mo., 381 S.W.2d 807, and State v. Mull, 318 Mo. 647, 300 S.W. 511. In the Aubuchon case, the prosecution brought out on redirect examination the fact that the witness' brother who was jointly indicted with the defendant was in the penitentiary in Jefferson City. The resulting implication was that the witness' brother had been sentenced for his part in the robbery with which the defendant and the brother were both charged. The answer was in response to direct and leading questions by the prosecutor. The court did not rule on the objection promptly and apparently made no adequate effort to overcome the prejudicial effect of the evidence. There were other aggravating circumstances. A similar situation existed in the Mull case. In both cases the evidence was elicited by the prosecutor intentionally. In the instant case the statement by the witness was not responsive to any question and so far as appears from the record the statement was entirely inadvertent. Neither the Aubuchon nor the Mull case is controlling on the facts of this case.

■■■ The declaration of a mistrial properly and necessarily rests in the sound discretion of the trial court who has observed the incident giving rise to the request for a mistrial and who is in a better position than the reviewing court to evaluate the prejudicial effect and the possibility of it removal by action short of a mistrial. State v. Camper, Mo., 391 S.W.2d 926, 927–928 [3]. Where *improper* evidence comes into a case but is promptly stricken by the court and the jury is instructed to disregard it, the reviewing court, in order to hold that the failure to grant a mistrial was reversible error, must determine and conclude as a matter of law

from the entire record that the error was prejudicial and so impressive that its effect was not removed by the action of the trial court. State v. Camper, Mo., 391 S.W.2d 926, 927–928 [4]; State v. Fulkerson, Mo., 331 S.W.2d 565, 570 [1]. It necessarily follows that each such issue must be decided on the facts of the particular case.

■■■ As previously indicated officer Bonzon's statement that Lindner told him "he knew Abbie previously from the penitentiary" was not responsive to the prosecutor's question and was voluntary on the part of the witness. There is nothing in the record to show that the state was blameworthy or that the witness intentionally included the statement in his answer for the purpose of influencing the jury improperly. Officer Bonzon has been a member of the police force for ten years and a detective in the burglary and robbery division for four years. In the state's case in chief, he testified on direct examination that he and officer Owens went to Kansas City and brought the defendant back to St. Louis by automobile. On cross-examination, defendant's counsel went into the matter of their interrogation of the defendant and asked Bonzon what they did on the way back to St. Louis. The answer received without objection was: "On the road down—and I don't mean to sound funny, but we heard about Mr. Dennison's knowledge of the law. He just recited case after case to us all of the way back from Kansas City. We made some other small talk, but no mention of this particular offense."

In response to further questions by the defendant's counsel, the witness Bonzon, as previously indicated, testified how the officers found the defendant's name in the police files and also located a "Police Department photo of the defendant". In rebuttal of Lindner's testimony, officer Bonzon denied that he first mentioned the defendant's name to Lindner and denied that he had known or heard of James Albert

Dennison before Lindner gave them the information. The defendant did not object to any of this evidence which preceded the reference to the meeting in the penitentiary. After the objectionable statement was made, the defendant's counsel asked Bonzon whether officer Owens who had been on the force since 1940 had known the defendant previously. By this and other questions asked, the defendant appeared to be trying to develop that the police officers had knowledge from a source other than Lindner that caused them to suspect the defendant. Proof of the prior conviction of second-degree murder shows that the defendant was sentenced on October 4, 1940, and was released from the penitentiary on August 13, 1956. See also State v. Dennison, Mo., 154 S.W.2d 756. The segment of the answer objected to was part of what Lindner told officers Bonzon and Owens. While the statement does not say that the defendant was an inmate or confined in the penitentiary, we treat it as if the jurors would have inferred that he was.

On the whole record, the reference to the penitentiary does not appear to be wholly unrelated to subjects bearing on criminal activity which went into evidence without objection by the defendant, some of which was initiated by the defendant. The action of the trial court to eradicate any ill-effect of the statement was prompt and generous. There was no effect on the part of the state to make capital of the incident. We cannot say as a matter of law that the statement in its context was of such a nature and so impressive that any improper effect was not removed by the action of the court.

In Evenson v. United States, 316 F.2d 94, the United States Court of Appeals for the Eighth Circuit held that an apparently inadvertent reference by a prosecution witness to the defendant's past criminal record was not prejudicial in view of the strong case made by the government and the prompt and decisive action of the trial court in striking the

evidence and instructing the jury to disregard it. In the present case the chief issue was the identification of the second robber. The witness Talley had a good opportunity to observe him during their encounter at the front door of the store and again when the automobile carrying the robbers passed Talley standing on the sidewalk. Mr. Hendin observed the second robber from across the counter as he entered the store and thereafter as he stood half-turned toward the front door. Both witnesses made positive and convincing identifications in court. The verdict was well supported by the evidence. We are further buttressed in our conclusion that the court did not err in refusing a mistrial by the decisions in the following cases: State v. Mallory, Mo., 423 S.W.2d 721, 723 [3]; State v. Madden, Mo., 394 S.W.2d 317, 322 [6]; State v. Camper, Mo., 391 S.W.2d 926, 928 [6]; State v. Fulkerson, Mo., 331 S.W.2d 565, 571 [2]; State v. Daegele, Mo., 302 S.W.2d 20, 25 [11]; State v. Tourville, Mo., 295 S.W.2d 1, 7 [13]; State v. Lawrence, Mo., 280 S.W.2d 842, 847 [5].

█ The defendant further contends that the court erred in refusing to give an instruction requested by him which in effect told the jurors that the defendant was under no obligation to testify and that they were not permitted to infer, speculate or assume his reasons for not doing so or what his evidence would have been if he had testified. In Franano v. United States, D.C., 243 F.Supp. 709, cited by the defendant, the court held that the accused, if he requests it, is entitled to a cautionary instruction that his failure to take the stand does not create any presumption or adverse influence against him. Regardless of what may be the rule elsewhere, it is now well established in this state that the giving of such an instruction would be inconsistent with the protective purpose of § 546.270, RSMo 1959, V.A.M.S., and the refusal to give that sort of cautionary instruction, even when the defendant requests it, is not error. State

v. Barker, Mo., 399 S.W.2d 1, 3 [2]; State v. Perkins, Mo., 382 S.W.2d 701, 707 [10]; State v. Aubuchon, Mo., 381 S.W.2d 807, 816 [18]. The claim of error is denied.

■ The defendant's final contention is that the "trial court erred in failing to require the State to produce for use by defendant in cross-examination (a) prior inconsistent written statements of the State's witness, (b) documents to which those witnesses referred and (c) the names of those witnesses which it interviewed but did not call." This assignment of error is hardly a faithful compliance with S.Ct. Rule 83.05(a) V.A.M.R., which requires the points relied on to "show what actions or rulings of the Court are sought to be reviewed and wherein and why they are claimed to be erroneous". The assignment does not specify the rulings complained of and the record does not disclose a basis for the general assertion. The points and authorities in an appellate brief have the definite purpose of isolating and formulating the precise issue to be reviewed and that function, if observed at all, should not be relegated to the written argument. Clemons v. Becker, Mo., 283 S.W.2d 449, 452 [5]; State v. Ash, Mo., 286 S.W.2d 808, 812 [14]. For authorities, we are cited to an article in the June 1966 issue of Washington University Law Quarterly at page 321 entitled, " 'Work Product' In Criminal Discovery", and the Tyrrell Williams Memorial Lecture by Mr. Justice Brennan of the United States Supreme Court published in the June 1963 issue of the Washington University Law Quarterly at page 279 entitled, "The Criminal Prosecution: Sporting Event or Quest for Truth". For "comparison" the defendant cites State v. Aubuchon, Mo., 381 S.W.2d 807.

■ The written argument asserts that officer Bonzon was permitted over objection to testify to the existence of a warrant for the arrest of the defendant. The legality of the arrest was not an issue in the case. There was no motion to quash the arrest prior to trial. The state did not offer in evidence any statement made by the defendant or any property seized or taken from him. Speaking from recollection, officer Bonzon testified the warrant was issued June 9 and that he and officer Owens took custody of the defendant from the Kansas City police on June 10. From the court file, counsel for defendant produced a warrant dated June 14 and asked the witness if he had any warrant in his possession other than the one exhibited to him and he replied that he did not have. The purpose of such questioning could only have been to discredit or impeach the witness as to a particular fact not material to the issue; hence, the anwers given were binding on the interrogating party and could not be contradicted by other evidence. 98 C.J.S. Witnesses § 516, p. 442; State v. Messley, Mo., 366 S.W.2d 390, 393 [2-6].

■ Also in his written argument the defendant says the court erred in failing to require the state to produce statements taken from the victim Maurice Hendin. This issue was injected by the defendant during the trial of the case. No reference was made by the state to any statement in its direct examination of Mr. Hendin. On cross-examination the defendant developed that the police took statements from Mr. Hendin, one just after the robbery and another at the time he identified the defendant. Mr. Hendin testified he did not have a copy of them and had not referred to them to refresh his recollection. Before concluding his cross-examination, the defendant orally requested that the court require the state to produce the statements taken from Mr. Hendin. The court declined the request. In these circumstances the court did not err in refusing the request. State v. Hale, Mo., 371 S.W.2d 249, 253 [4-6]; State v. Cody, Mo., 379 S.W.2d 570, 574 [2]; State v. Aubuchon, Mo., 381 S.W.2d 807, 813-814 [5-10].

We have considered all questions presented by the defendant and find them to be without merit. Our examination of the record as required by S.Ct. Rule 28.02, V.A.M.R., discloses no error. Accordingly the judgment is affirmed.

HENLEY, P. J., concurs.

SEILER, J., dissents in separate dissenting opinion filed.

## DISSENTING OPINION

SEILER, Judge.

I respectfully dissent, for the reason I believe the rebuttal testimony of the detective quoted in the majority opinion was so prejudicial under the circumstances that its effect was not removed by the action of the trial court and can be cured only by a new trial. The fact that the testimony was not elicited purposefully or deviously by the state does not prevent its being prejudicial if in fact it was.

When Detective Bonzon, who, as a St. Louis detective, would be regarded by the jury as knowledgeable on such matters, volunteered the statement that Lindner said he "knew Abbie previously from the penitentiary", it clearly got before the jury the information defendant had been previously convicted and sentenced to the penitentiary, a damaging fact the state had no right to show, State v. Levitt, 278 Mo. 372, 213 S.W. 108, 109, as defendant had not taken the stand and defendant's having been in the penitentiary earlier was in no way admissible to prove the present charge against him. Up to this moment, there was nothing before the jury to indicate that defendant had any previous record or had been in the penitentiary and this revelation unquestionably was harmful to defendant. As was said in State v. Mobley (Mo.Sup.) 369 S.W.2d 576, 581: "* * * All lawyers and judges know that a jury's knowledge of prior convictions is, in itself, a most damning thing in the trial of a criminal case."

As the majority opinion states, the chief issue in the case was the identification of defendant. The identification by the proprietor, Hendin, was not entirely satisfactory: he had been unable to identify defendant when he first viewed him in the police station, even though the defendant was within a few feet of him. The other witness, Talley, an employee at the police garage, was quite positive in his identification. As against this the confessed principal robber, Lindner, testified defendant was not his accomplice. He said he had known defendant 15 or 16 years, but said nothing about when or where, except that they were "just friends". Then Bonzon volunteered the statement that Lindner told them "he knew Abbie previously from the penitentiary". This does not in any way rebut Lindner's testimony, which was that he *did* know defendant, had known him for 15 or 16 years.

"'* * * [T]he state cannot, under the guise of impeachment, show facts which tend directly to prejudice the defendant, but which only remotely, if at all, discredit the witness * * *'", State v. Conway, 241 Mo. 271, 145 S.W. 441, 444. The volunteered statement and its implications pretty clearly make it easier for the jury to reason that if Lindner and defendant were friends together at the penitentiary, it was much more likely that defendant was the accomplice, than would have been the case had they not had this information. "Prejudice, as it affects the defendant's legal rights, is not a matter of degree. If the defendant was prejudiced to any extent by the improper evidence, it was undue and we cannot say that the defendant had a fair and impartial trial according to the law and the evidence." State v. Burchett (Mo.Sup.) 302 S.W.2d 9, 15.

It is true the court asked the jury whether anyone felt this would prevent their giving a fair trial and arriving at a fair verdict, to which there was no response. However, such a question is not one which can or should be resolved by the individual jurors themselves deter-

mining the effect upon them of improper evidence, State v. Spidle (Mo.Sup.) 413 S.W.2d 509, 513, or by the court acting on the basis of the jurors' silence following his inquiry; rather, it is a question of how such improper evidence would react upon average jurors and how it bears upon defendant's right to a fair trial and here, it seems to me, defendant's rights were prejudiced and he is entitled to a new trial where such prejudice will not reoccur.