**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Charles "Red" WARDEN,
Defendant-Appellant.**

**No. 40345.**

Missouri Court of Appeals,
Eastern District,
Division Three.

Nov. 13, 1979.

Motions for Rehearing and/or Transfer to Supreme Court Denied Dec. 14, 1979.

Applications to Transfer Denied
Jan. 15, 1980.

J. Martin Hadican, Clayton, for defendant-appellant.

John Ashcroft, Atty. Gen., Paul Robert Otto, Kristie Green, Asst. Attys. Gen., Jefferson City, Timothy J. Patterson, Pros. Atty., Hillsboro, for plaintiff-respondent.

CRIST, Judge.

Defendant was convicted by a jury of first degree murder and his punishment assessed at life imprisonment. We affirm.

Defendant's conviction stemmed from the contract slaying of his brother at defendant's behest. In furtherance of his goal, defendant enlisted the employ of Norvel "Butch" Cadwallader and James Hudson. The three met at defendant's apartment and there discussed terms. Defendant declared that it was worth $500.00 to him to have his brother shot and laid the money on a table. Hudson expressed his willingness to do the actual shooting and Cadwallader pocketed the money. Later, Hudson recanted, and Hubert Brissette was substituted as the executioner. Brissette was to receive $400.00 for pulling the trigger with Hudson agreeing to drive for $100.00.

Cadwallader procured a gun and gave both it and the remainder of the money to Brissette with the admonition that he was washing his hands of the whole affair. Hudson again backed down by refusing to drive, but it was agreed that he would receive $100.00 for the use of his car. On January 20, 1975, Brissette shot and killed defendant's brother. Defendant does not challenge the sufficiency of the evidence.

At trial, defendant elected not to testify but claims in point one of his brief that he would have testified had not the trial court ruled that evidence of his former conviction could be used to impeach him. Basically, defendant argues that § 491.050 RSMo. 1969, which provides for impeachment of a witness by use of a former conviction, should be imposed so as to allow the trial court a measure of discretion in determining whether the prejudicial effect of

such impeachment evidence (though it be probative and otherwise admissible) outweighs its probative value. Defendant admits that, heretofore, the Supreme Court of Missouri has construed the statute to confer an *absolute* right to admit such evidence and, we urge no other construction. We are bound by the mandate of our Supreme Court. Defendant's first point stands denied. See *State v. Toliver*, 544 S.W.2d 565, 568 (Mo.banc 1976) and *Forbis v. Associated Wholesale Grocers, Inc.*, 513 S.W.2d 760, 764–767 (Mo.App.1974).

Defendant next complains of the trial court's failure to declare a mistrial after a witness for the state alluded to the defendant having previously been in prison. Defendant objected to the remark and asked for a mistrial. The trial court sustained the objection, directed the jury to disregard the remark, but refused to declare a mistrial.

■ Generally speaking, testimony which indicates a defendant's guilt of a different and separate offense is inadmissible and, thus, when the court inadvertently instructs the jury that a defendant is charged under the "Habitual Criminal Act," the error necessitates reversal. *State v. Martin*, 506 S.W.2d 473, 474 (Mo.App.1974). Likewise, it is reversible error for the prosecutor to refer to other, unrelated, separate and distinct crimes. *State v. Lee*, 486 S.W.2d 412, 413–414 (Mo.1972). However, where a state's witness volunteers an unresponsive reference to yet another unrelated, separate and distinct crime, such reference may or may not constitute reversible error. In this respect, the trial court's decision to grant or not to grant a mistrial due to such an unresponsive reference is paid great deference, primarily because that court occupies a superior position from which to gauge the remark's prejudicial effect. Several cases are illustrative.

In *State v. Harris*, 547 S.W.2d 473 (Mo. banc 1977), the court found no reversible error where the jury was informed the defendant had been charged, "of one prior conviction and operation of a motor vehicle without the owner's consent." In *Harris*, a mistrial was refused, the evidence stricken

and the jury instructed to disregard the reference. This action was deemed sufficient to cure the error.

In *State v. Dennison*, 428 S.W.2d 573 (Mo.1968), the witness volunteered the fact that the defendant and another became acquainted on a previous occasion in the penitentiary. Defendant's request for a mistrial was denied, and again it was deemed sufficient that the jury be instructed to disregard.

■ The *Dennison* case and the instant case are similar inasmuch as they contained similar references and similar remedies. We adopt like reasoning and reach a similar conclusion, i. e., that the trial court is in the better position to evaluate the prejudicial effect of the unresponsive remark. This point is also denied.

Defendant's third point on appeal is addressed to the alleged foreclosure of an opportunity to impeach state's witness Cadwallader. Cadwallader had previously been charged with conspiracy to commit murder under facts arising out of this identical incident.

On cross-examination, and in response to defense counsel's questions, Cadwallader indicated that his testimony was not the result of promises made him by the prosecution. Cadwallader was later asked by defense counsel whether he was aware that he could not be prosecuted for conspiracy because the statute of limitations had run as to that offense. Cadwallader stated that he was not made aware of that fact and expressed confusion as to what effect the statute of limitations would have on the status of his case.

Defense counsel attempted to impeach Cadwallader by demonstrating to the jury that the statute of limitations on the conspiracy charge had, in fact, run. The trial court refused to permit the demonstration for the reason that defense counsel had made no attempt to show Cadwallader was aware of the status of his case and was concealing this knowledge from the court. We agree.

Even were one to assume defense counsel's ability to prove the statute of limitations had run, such proof would not have resulted in the impeachment of Cadwallader who claimed he simply did not know.

■ Impeachment could not have resulted absent a showing of facts which would tend to establish Cadwallader's knowledge and, an attempt to conceal same. Defense counsel did not purport to offer proof of this knowledge and the status of Cadwallader's case was, at best, merely ancillary to the trial issues. Although, great latitude is allowed a cross-examiner, especially in the cross-examination of an accomplice (see *State v. Rose*, 339 Mo. 317, 96 S.W.2d 498, 504 (1936)), defense counsel's questions bore no relation to Cadwallader's credibility, nor any other issue relative to the case. *State v. Knicker*, 424 S.W.2d 605, 607 (Mo.1968). No abuse of discretion being apparent, this point is also denied.

Defendant lastly contends, in his pro se brief, that the trial court lacked jurisdiction to proceed because an amended complaint was filed in the magistrate court prior to the preliminary hearing, in violation of Rule 24.02 and, further, that an amended information was filed in the trial court without leave of court.

Defendant was initially charged with conspiracy to commit murder by complaint filed in the magistrate court on January 24, 1975. Defendant was subsequently charged with first degree murder by amended complaint filed on October 7, 1977. A preliminary hearing was held on October 14, 1977, and defendant bound over for trial. The original information, charging defendant with first degree murder, was filed October 18, 1977, and on February 22, 1978, the amended information was filed which charged defendant with the identical crime but which additionally charged him under the Second Offender Act. Trial began on March 6, 1978, with defense counsel indicating that defendant would plead not guilty and would waive formal reading of the amended information. After presentation of the evidence, the prosecutor stated to the court that he would be unable to proceed under the provisions of the Second Offender Act as he had not received the requisite documentation from federal authorities. Accordingly, the jury assessed punishment.

■ Application of four precepts resolve this point against defendant. First, defendant was not denied due process in that he was afforded a preliminary hearing upon the filing of the *amended* complaint in the magistrate court. Rule 24.02. Second, defendant waived any imperfections or irregularities which may have arisen in the magistrate court by proceeding to trial before the circuit court without objection. *State v. Frankum*, 425 S.W.2d 183, 187 (Mo. 1968). Third, defendant was not denied due process in the circuit court by the filing of the amended information as he elected to waive arraignment on it and, proceeded to trial without objection. *State v. Ninemires*, 306 S.W.2d 527, 530 (Mo.1957); *State v. Colbart*, 411 S.W.2d 92, 95 (Mo.1967). Fourth, the filing of the amended information, which amended information alleged a prior felony under the Second Offender Act, was not tantamount to his being charged with a separate or distinct offense. *State v. Shumate*, 516 S.W.2d 297, 299 (Mo. App.1974). In any event, as the state was unable to make a case under the Second Offender Act, the amendment was immaterial.

Judgment affirmed.

DOWD, P. J., and REINHARD, J., concur.