**STATE of Missouri, Respondent,**

v.

**Robert Louis THOMPSON, Appellant.**

No. 52006.

Supreme Court of Missouri, Division No. 2.

April 10, 1967.

Motion for Rehearing or to Transfer to Court En Banc Denied May 8, 1967.

Norman H. Anderson, Atty. Gen., Jefferson City, McCormick V. Wilson, Special Ass't. Atty. Gen., Jefferson City, for respondent.

Hildebrandt & Smith, Wayne C. Smith, Jr., and David W. Bernhardt, Springfield, for appellant.

FINCH, Judge.

Defendant, charged with attempted robbery in the first degree, was convicted by a jury and sentenced to imprisonment for seven years. He appeals from that judgment.

An information charging attempted robbery was filed March 30, 1961, under §§ 560.120 and 556.150.[1] Thereafter, on August 28, 1961, an amended information was filed and defendant was tried on October 30 and 31, 1961. He was found guilty and sentenced to imprisonment for twenty years. No appeal was taken, but on December 19, 1963, defendant filed a motion to vacate the judgment and sentence pursuant to Supreme Court Rule 27.26, V.A.M.R. Said motion was overruled by the trial court but on appeal this court held that the amended information charged a different and distinct offense (assault with malice with a dangerous and deadly weapon with intent to rob under § 559.180) from that charged in the original information. This court vacated the original judgment and sentence and remanded the case for further proceedings on the original information or otherwise as the State might elect, but directing that the defendant could be tried only on a charge of attempted robbery. State v. Thompson, Mo., 392 S.W. 2d 617.[2]

The decision of this court on the prior appeal was rendered on July 23, 1965. After remand, defendant, on September 13, 1965, filed a motion to dismiss the charge and to discharge the defendant on statutory and constitutional grounds for failure to receive a speedy trial. The trial court overruled the motion to dismiss. Thereafter, defendant was tried and the jury fixed his punishment at imprisonment for seven years. The trial court ordered that defendant be given credit for 150 days on account of donation of blood while he was in prison and for 197 days spent in jail prior to sentence, or a total credit of 347 days.

The questions presented by defendant on appeal are (1) there was no evidence to support a conviction of the crime of attempted robbery, first degree, and defendant was entitled to a judgment of acquittal at the conclusion of all the evidence; (2) the court erred in overruling defendant's motion to dismiss because he had been denied a speedy trial, and (3) the court committed error in failing to credit defendant with time spent by defendant in jail or in prison.

■ The evidence on behalf of the State would support the following recital of facts: On the evening of March 23, 1961, Murreldean May Archer went to a Safeway Store at State and Campbell in Springfield, Missouri, to purchase groceries. She took the groceries to her home and then drove back to the Dutch Maid Laundromat which was adjacent to the Safeway Store. She had her laundry and her purse when she went into the laundromat. She placed her purse on a chair at the end of the table on which she was working. She washed her clothes and then put some in the dryer and started to starch her husband's shirts.

As Mrs. Archer was starching the shirts and had put a shirt in the wringer for that purpose, the defendant came in the back door. There had been two other persons in the laundromat when Mrs. Archer first went in but meanwhile they had left. Defendant went by Mrs. Archer toward the front of the building and then came back, grabbed her by the shoulder and spun her around, saying "This is a robbery." He had a knife in his hand at the time. Mrs. Archer screamed and defendant then stabbed her with the knife. She started fighting with him and trying to get away from him. She testified that the act of defendant in grabbing her and spinning her around, her scream, the stabbing and her struggles "were almost instantaneous." Mrs. Archer said she could not say if defendant made any move for her purse while they were fighting.

Mrs. Archer finally succeeded in breaking loose and ran out the front door of the laundromat, screaming as she went. She

1. All statutory citations are to RSMo 1959, V.A.M.S., unless otherwise indicated.

2. Both the original and amended informations are set out in that opinion and are not repeated here.

did not look back to see the defendant or how long he remained in the laundromat. She ran out into the street, screaming, "Please stop. Somebody help." A Mr. Tarbutton, who was driving by, stopped. Mrs. Archer told him that she had been stabbed and she wanted him to go back into the laundromat to get her purse. When he declined, Mrs. Archer went in and got it, and then Mr. Tarbutton drove her to the police station. It was ascertained that nothing had been taken from the purse.

Defendant testified. He conceded that he was in the laundromat that night and had stabbed Mrs. Archer, but denied that he intended to rob her or that he went to her purse where it was laying on the chair, although he stated he had seen it there before the difficulty with Mrs. Archer.

Was there evidence to support the conviction of the crime of attempted robbery in the first degree? Defendant says not, for the reason that there was no evidence that he reached for the purse, or touched it, or attempted to take anything out of it. Consequently, there was no evidence of an attempted larceny, an essential element of a robbery. He argues further that Mrs. Archer apparently knew that he had made no attempt to take her purse or its contents because she went back into the laundromat to get her purse and did not even check its contents when she came out. This conduct, he says, is wholly inconsistent with any attempt on the defendant's part to take the purse or its contents.

If we were to adopt defendant's reasoning we would establish the rule that proof of an actual physical move to take possession of property of the intended victim would be necessary to support a conviction of attempted robbery. Necessarily, we would say that even though the would-be robber stated, "Stick 'em up" or "This is a robbery" or "Give me your money," and accompanied his statement by force or putting the victim in fear, still he would not be guilty of attempted robbery if there was no evi-

dence of a physical move to take possession of property. If defendant was frightened away or was apprehended before making any move to reduce the money or property to actual possession, he could not be guilty of attempted robbery, if we follow defendant's argument to its logical conclusion. We do not agree. The jury could find from what occurred that defendant did intend to take property from the person or in the presence of Mrs. Archer. He spoke words at the time expressly stating that purpose. He grabbed her and exhibited a knife and used it when she screamed and resisted. The jury could find that when defendant observed he had stabbed her and she ran out into the street, bleeding and screaming for help, he concluded that he had better absent himself quickly, and that the robbery was not consummated for that reason. We do no violence to logic when we attribute to defendant's actions and words exactly the meaning and character with which defendant himself described them at the moment they were performed. We attach no special significance to the fact that Mrs. Archer subsequently wanted to return and get her purse and did not check its contents when it was retrieved. She was wounded and excited, even terrified, and it is not reasonable to expect that when she wanted to and did not retrieve her purse, she had coldly analyzed that "my purse is still there and I know the contents are not disturbed because defendant made no move to actually take the purse."

In the cases of State v. Scott, 332 Mo. 255, 58 S.W.2d 275, 90 A.L.R. 860, and State v. Newman, Mo., 289 S.W. 831 both cited by defendant, this court upheld convictions of attempted robbery. In Scott, four men came into a room at the rear of a restaurant where a dice game was in progress. They had handkerchiefs over their faces and their hat brims were pulled down, and one said, "Stick 'em up." One of the players by the name of Robinson reached down and took $16 or $17 in silver from the table and put it in his pocket. One of the four would-

be robbers shot Robinson in the chest and he fell, after which the robbers fled without any move to actually take possession of money or property. In Newman, three men entered a drugstore. When the druggist went to wait on one of them, the man extended a revolver across the counter and told the druggist to "Stick 'em up." The druggist stepped back, drew a gun and he and the man exchanged fire, after which he and a companion ran from the store. The druggist then assisted another clerk in the store who was struggling with a third would-be robber. He was subdued and held until the police came. There was no evidence of any effort on the part of the three men actually to take possession of money or property in the drugstore.

In neither of these cases did the court enter into a discussion of the nature of the charge or the presence or absence of evidence that the men made efforts physically to take possession of money or property, but in both cases the court sustained convictions of attempted robbery in the first degree. Defendant seeks to distinguish both cases. With reference to Scott, the only difference which defendant seems to point out is that the $16 or $17 were in plain sight on the crap table but there was no evidence that the robbers tried to take possession of the cash. Defendant recognizes that in Scott there was in fact an attempted taking or larceny. We fail to see where there is any real basis for distinction between the evidence in that case and the evidence against this defendant.

Defendant also recognizes that the State made a case of attempted robbery in Newman. In discussing it, defendant emphasizes the fact that the place where the attempted robbery occurred was a place of business and that there could have been no purpose other than robbery. The record before us in this case discloses no other purpose either. We fail to perceive any real distinction. In all these cases (Scott, Newman and this case) the defendant displayed a weapon, stated positively that it was a holdup or robbery or that the victim

should "Stick 'em up." Thereafter trouble arose, a shooting or stabbing occurred, and the would-be robber or robbers ran without any further move to actually touch or reach for property or reduce property or money to physical possession.

Defendant relies also on State v. Vandament, Mo., 299 S.W.2d 532, in which this court overturned a conviction for attempted robbery in the first degree. An examination of the opinion clearly discloses that the taking was from cabinets in the tavern, not in the presence of or from the person of anyone. The assault occurred in connection with escaping after the taking of the money. One defendant testified as to a conspiracy to rob the place, but the court held that this later statement and the assault which occurred in connection with escaping after taking the money did not relate back and convert a prior larceny into robbery. The case is not analogous.

Defendant also cites the cases of State v. Brown, Mo., 245 S.W.2d 866, and State v. Hagerman, Mo., 244 S.W.2d 49. These cases however, involve charges of assault with a dangerous or deadly weapon with intent to rob. Both convictions were affirmed. Neither case is any authority for the proposition that there was not sufficient evidence in this case to support a conviction of the defendant herein for attempted robbery in the first degree.

■ Our second question is whether defendant's motion to dismiss and to discharge on the basis of deprivation of statutory and constitutional rights to a speedy trial should have been sustained. Defendant relies on §§ 545.890, 545.900 and 545.920 of the statutes, Art. I, § 18(a) of the Constitution of Missouri of 1945, and the Sixth Amendment to the Constitution of the United States.

Defendant's position is that although the original information was filed March 30, 1961, there was no effort to get the case to trial on that information until August 30, 1965. During that time, says defend-

ant, three terms passed each year (more than the number specified in §§ 545.890, 545.900 and 545.920) and hence defendant did not receive a speedy trial on that charge and he is entitled to discharge under the above-mentioned statutory provisions as well as under the state and federal constitutional provisions which guarantee speedy trials.

The original information was filed March 30, 1961. Thereafter, at defendant's request, the case was remanded to the magistrate court for a preliminary, hearing, which was held May 4, 1961. Defendant was bound over to the circuit court, and thereafter the amended information was filed August 28, 1961. He was tried and convicted on the amended information on October 30 and 31, 1961, and sentenced to imprisonment for twenty years. His motion for a new trial was overruled on November 17, 1961. No appeal was taken, and defendant was imprisoned pursuant to the judgment and sentence. Nothing further occurred until December 19, 1963, when defendant filed in the Circuit Court of Greene County his motion to vacate under Supreme Court Rule 27.26, V.A.M.R. The motion was heard and overruled in the trial court and defendant appealed to the Supreme Court. On July 23, 1965, this court filed an opinion vacating the judgment and sentence, and our mandate was filed in the Circuit Court of Greene County on August 10, 1965. The trial court then released previously appointed counsel and appointed present counsel for defendant. After various motions and orders, including the order overruling defendant's motion to dismiss and to discharge for failure to receive a speedy trial, defendant was tried on November 29 and 30, 1965. This is an appeal from that conviction.

We consider that what this court said in State v. Hadley, Mo., 249 S.W.2d 857, 862, is pertinent: " * * * there has been no delay by the state in the sense that the state has ever been slow or reluctant to prosecute. On the contrary, the delay is wholly due to the belated discovery of a fatal error in the record of the first pro-

ceeding, which, it is true, sufficed to entitle defendant to relief from the sentence and judgment which had been pronounced upon him, but only to the point of remanding him back into custody to await further proceedings according to law. In other words, the ultimate situation is no different than if he had appealed from the first judgment upon the same ground that he later advanced in habeas corpus, and had secured a reversal of the judgment. The offense of which he is now convicted is the identical offense with which he was charged in 1930; and at every moment of the period during which he was imprisoned under the first judgment, the courts were open to him for the redress which he obtained as soon as he invoked his remedy. There has been no denial of defendant's constitutional right to a speedy trial."

There is a difference between Hadley and this case, as defendant points out. In Hadley the offense of which defendant was convicted at the later trial was the identical offense with which he had been charged and convicted back in 1930. In this case the second conviction is for attempted robbery in the first-degree, as charged in the original information, where as the first conviction was for assault with malice with a dangerous and deadly weapon with intent to rob under the amended information. However, we do not consider that this distinction dictates any different result. This still was a single case. There were not separate charges in different cases pending against defendant at the same time. As Judge Eager stated in the prior Thompson appeal, 392 S.W.2d 617, 622, the original information was simply suspended during the proceedings on the amended information.

Fundamentally, there is no real difference in the situation here than that which existed in Hadley. In each an error was committed in connection with the first conviction, but it was corrected by the Supreme Court on the first occasion when the question was presented to it by defendant. That merely entitles defendant to a new trial. The delay involved does not entitle defendant herein

to be discharged without a retrial for the same occurrence in the same case on the original information (on which the Supreme Court said he should have been tried in the first instance). The fact that the original conviction was not appealed and that the original judgment was not attacked until the 27.26 proceeding was instituted was not due to inaction on the part of the State. This delay is attributable to defendant. The State could not proceed to try defendant on the original information while he was under sentence on the amended information in the same case. Meanwhile, the original information remained suspended, not having been quashed. State v. Thompson, supra, 392 S.W.2d l. c. 622. The fact that the prosecuting attorney made a mistake in amending the information to charge defendant with a violation of a different section of the statutes but arising out of the same occurrence should not entitle defendant to discharge for failure to receive a speedy trial, any more than he should be so entitled if the State commits some error in an earlier trial such as offering evidence not properly admissible or tendering an incorrect instruction.

■ The reason for the statutes and the constitutional provisions relied on by defendant is to prevent the State from allowing a charge to remain dormant without giving defendant an opportunity to defend himself and to have his case tried. What happened here is not the type of occurrence toward which these safeguards are directed. See State v. Hicks, 353 Mo. 950, 185 S.W. 2d 650, 651. The State did not fail in this case to accord defendant a prompt trial.

Defendant cites three cases in support of the proposition that failure to receive a speedy trial entitled him to have the case dismissed and to be discharged. None, in our judgment, is a basis for granting relief. In State v. Wear, 145 Mo. 162, 46 S.W. 1099, the defendant had been indicted for murder and subsequently had been released and discharged under a section of the statute (the predecessor of present § 545.900)

by reason of the fact that three terms had expired without a trial when the delay was not excused under the terms of the statute. Subsequently, defendant was indicted again and convicted, but the Supreme Court held that the prior release and discharge could be pleaded in bar to prosecution under the second indictment. We do not have before us the question of the effect of a prior discharge under one of these sections of the statutes.

In State ex rel. Stevens v. Wurdeman, 295 Mo. 566, 246 S.W. 189, there were indictments against the defendant in St. Charles County, St. Louis County and the City of St. Louis. He was tried and convicted in the City of St. Louis but not sentenced. Thereafter, he was tried, convicted and sentenced in St. Charles County and served that sentence. Upon release, he was sentenced in St. Louis on the first conviction and served his time. Upon the discharge from the latter imprisonment, St. Louis County sought to proceed with the indictment remaining in that county. At that time, one could not be placed on trial while he was under sentence in another case until after he had served the sentence. The Supreme Court held that after he had completed service of the sentence in the St. Charles County case, he could have been tried in St. Louis County before he was sentenced on the conviction in the City of St. Louis. When he was not, the statute requiring speedy trial ran and the defendant was entitled to be discharged, on motion, for failure of the State to prosecute promptly. Here, again, it is obvious that the factual situation in Wurdeman is not analogous to that in the case now before us.

On the basis of the cited constitutional provisions guaranteeing speedy trials, defendant cites and relies on the case of Petition of Provoo, D.C., 17 F.R.D. 183. It involved the prosecution of a soldier for treason while he was a prisoner of war after being taken prisoner at the fall of Corregidor. He was indicted in the Southern District of New York in 1949 and tried and convicted in 1952–1953. On appeal that

conviction was reversed. The court held that he had been "found" in Maryland, not in New York, and hence there was not venue in New York. When he was indicted in the District Court in Maryland in 1954, the court found that the government had made a deliberate choice to proceed in New York for a supposed advantage discussed in the opinion, and that such deliberate choice of venue caused oppressive delay and damage to the defendant. It would serve no useful purpose to discuss that case at length. In our judgment, the situations are not at all analogous and the Provoo case is not authority for the proposition that the motion of the defendant herein to dismiss and to discharge should have been sustained.

Defendant's final contention is that the court erred in failing to credit him with the full time he had been in jail or prison preceding the trial.

Defendant's first proposition in connection with this contention is that the court either abused or failed to exercise its discretion, contrary to § 546.615. Paragraph (1) of that section makes it mandatory that the defendant receive credit for time in prison or jail subsequent to the date of his sentence and prior to delivery to the state department of corrections, but that paragraph is not involved in this contention. Defendant relies on paragraph (2), which is as follows:

"546.615. When a person has been convicted of a criminal offense in this state

\* \* \* \* \* \*

"(2) The time spent by him in prison or jail prior to his conviction and the date on which sentence is pronounced may, in the discretion of the judge pronouncing sentence, be calculated as a part of the term of the sentence imposed upon him."

 It will be observed that the credit under this paragraph is discretionary rather than mandatory. When defendant was sentenced pursuant to the jury verdict, the trial judge, as previously indicated, allowed a credit of 347 days. This was done under the discretionary power granted in the above-quoted paragraph of the statute. At that time counsel for defendant also requested the trial court to allow as additional credit the rest of the time defendant was imprisoned following the conviction in 1961, but the trial court declined to give this additional time, electing to leave the net sentence at just slightly in excess of six years. We cannot say that the trial court abused or failed to exercise its discretion, and we decline to do so.

The only case cited by defendant in this connection is State v. Grant, Mo., 380 S.W. 2d 799. It involved reversal and remand for the purpose of granting allocution and merely stated that the trial court in pronouncing formal judgment should give defendant credit for such jail or prison time as would be just and proper under § 546.-615. It did not direct the giving of credit or seek to control the discretion of the trial judge, and it is not authority for the action which defendant would have us take herein.

Defendant also complains that the sentence from which this appeal was taken constitutes cruel and unusual punishment, in violation of Art. I, § 21 of the Constitution of Missouri of 1945 and the Eighth Amendment to the Constitution of the United States. No cases are cited in support of this contention.

 As a general rule, these constitutional provisions have reference to the statute fixing the limits of punishment for an offense, not to what is done within those limits by the court or jury in a particular case. See 15 Am.Jur., Criminal Law, § 526, p. 174. Defendant complains that the aggregate of time spent in the penitentiary under the first sentence and the seven-year term imposed at the second trial exceeds the maximum ten-year sentence allowable under the statute, but the net sentence fixed by the trial court, which was just a few days in excess of six years plus time spent in the penitentiary before the prior judgment was vacated, does not exceed ten years, and hence there is no need for us to reach this

question for decision. We hold that the sentence from which this appeal is taken did not constitute cruel and unusual punishment.

We have examined other matters of record pursuant to Criminal Rule 28.02, V.A. M.R., and find no error.

The judgment is affirmed.

All of the Judges concur.