**STATE of Missouri, Respondent,**

v.

**Michael McCRARY, Appellant.**

No. WD 49523.

Missouri Court of Appeals,
Western District.

May 23, 1995.

Rosalynn Koch, Office of the State Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Fernando Bermudez, Asst. Atty. Gen., Jefferson City, for respondent.

Before FENNER, C.J., P.J., and ELLIS and LAURA DENVIR STITH, JJ.

LAURA DENVIR STITH, Judge.

Michael McCrary was charged with attempted robbery in the second degree, § 564.011, RSMo 1994. He was convicted by a jury and sentenced to four years imprisonment. He appeals his conviction on the grounds that the evidence produced at trial was insufficient to establish his guilt and that the inadvertent admission of evidence regarding a suspicious individual demanding money in the vicinity of the attempted robbery deprived him of a fair trial.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On November 5, 1993, at 1:30 p.m., Fred Robertson, owner of Fred's Barber and Styling Shop, was cutting the hair of David Larabee when a man entered, wearing a stocking cap, a blue jacket and blue jeans. At trial, Mr. Robertson and Mr. Larabee both identified Mr. McCrary, the defendant, as the man who entered the barber shop.

Mr. Robertson testified as follows about what happened after Defendant walked into the barber shop:

A. He had his hand in his pocket. And he told me to either stick 'em up, set 'em up or whatever. He said "I have got a .22 in my pocket, you know what I mean."

Q. How did you react?

A. Surprised. Surprised. . . .

Mr. Robertson further testified that he "didn't know what to think of the situation." He said he thus decided to finish cutting his customer's hair, but, during the haircut he whispered to Mr. Larabee to "call the law" when he left.

In addition, as a protective measure in case Defendant came closer to him, Mr. Robertson unscrewed the lid on a bottle of tonic so that he would be able to throw it into Defendant's eyes. Defendant did not attempt to approach Mr. Robertson or his customer during the remainder of the haircut. Rather, he looked out the window, sat down in a chair with his hand still in his pocket, and watched Mr. Robertson intently, following every move with his hand in his pocket.

Mr. Robertson described Defendant's movements while in the shop as follows:

Q. How would you describe his movements while inside your barber shop?

A. Scary, to me; scary because I didn't know what he was inclined to be able to do. And that was—but I didn't know whether he was drinking or if he was on something; but with just the look in his eye and everything, I didn't know what was going to happen from there.

Mr. Robertson testified on cross-examination that Defendant had never specifically demanded or taken money. He further testified, however, that even though he continued to cut his customer's hair after Defendant told him Defendant had a .22, he took the threat of the .22 seriously and believed that Defendant might have a gun and be trying to rob the store.

Mr. Larabee, the customer, also testified about Defendant's actions in the barber shop. He said that after Defendant entered the barber shop, he stood around for a couple of minutes and then "said something like, 'set 'em up.'" Mr. Larabee further testified that as Defendant "was walking over to start sitting down, he said, 'You don't know what I am talking about, do you?' Then he said he had a .22."

Mr. Larabee confirmed that Mr. Robertson just ignored Defendant and continued to cut his hair. He also said that every time he looked at Defendant, Defendant "would start pointing his pocket up further at me." Once Mr. Larabee's haircut was finished, he paid the barber and left the shop, walking very quickly. In order to avoid walking near where Defendant was sitting, Mr. Larabee took an indirect route to the door that took him around the part of the shop which was furthest away from Defendant. Defendant did not attempt to stop Mr. Larabee from leaving but did continue to point at Mr. Larabee with his pocket as Mr. Larabee moved about the barber shop in leaving.

Mr. Larabee said he had not heard the barber tell him to "call the law", but that he nonetheless flagged down a police officer, later identified as Sergeant Walden, as he was driving away from the barber shop and told Sergeant Walden there was a guy trying to rob Fred's Barber Shop. The Sergeant told Mr. Larabee to follow him back to the barber shop, and called in Mr. Larabee's report of an attempted robbery.

Another officer, Officer Wilson, heard the robbery report over his police radio. Officer Wilson had observed Defendant through the window of the barber shop as he had driven past the shop a few minutes earlier on his way to a call a few blocks away about a "suspicious" character who had asked a woman for money. At the time he had noted that the person in the barber shop matched the description of the "suspicious" person. When Officer Wilson could find no one at the location where the "suspicious" person had been observed, he began driving back to the barber shop to see if the person he had seen inside was the person he was looking for. It was at that point that he received Sergeant Walden's report of a hold-up in progress at the barber shop.

In the meantime, events at the barber shop had continued to unfold. Defendant had turned toward the door to watch Mr. Larabee leave the shop. As soon as Mr. Larabee was gone, Mr. Robertson said to Defendant, "You son of a bitch. I want to see the gun," and took a step toward Defendant.

While the testimony is somewhat unclear, it appears that Defendant then turned back to Mr. Robertson and again said that he had a .22 in his pocket. At about that same time, Mr. Collins, a city employee, carrying a radio in his hand, drove up to the barber shop in a St. Joseph city car with the initials "SJ" on the side panel of the car. Mr. Collins was simply coming inside to get a haircut. However, when Defendant saw the city emblem on the car and saw Mr. Collins walking toward the shop, he stated, "You called the law." Defendant then took off his stocking cap, asked how much haircuts were, and sat down.

A moment later, Mr. Collins entered the shop, and almost immediately after that Officer Wilson entered the shop with his gun drawn. Defendant was seated inside the barber shop, combing his hair, by the time Officer Wilson entered. Officer Wilson ordered Defendant to take his hands out of his

pockets, but had to issue this command several times before Defendant complied. Defendant brought both hands up, revealing a cigarette lighter in his left hand and a comb in his right hand. A search revealed that Defendant was not carrying a weapon. Officer Wilson detected a slight odor of alcohol on Defendant's breath and noticed that his reactions were very slow. Officer Wilson placed Defendant under arrest.

The police took a statement from Mr. Robertson right after the incident. He said that he was feeling "rattled" at the time, and that "I guess I really never realized how rattled I was until later on in the day, but [I was] very rattled."

Defendant did not testify. He filed a motion for judgment of acquittal at the close of the trial, arguing that the State had failed to prove that he intended to rob the store. His motion was denied. The jury returned a guilty verdict, and this appeal followed.

## II. LEGAL ANALYSIS

### A. Sufficiency of Evidence.

■ Defendant argues that the State failed to show that he had the requisite intent to be convicted of attempted second degree robbery. He claims that the record is devoid of any evidence of his intent to forcibly take property and that the lone fact that he claimed to have a gun and told his victims that he had a gun, without more, was insufficient to infer that a robbery was contemplated.

■ In testing the sufficiency of the evidence by motion for judgment of acquittal, facts and favorable inferences reasonably drawn therefrom must be considered in the light most favorable to the State, and all contrary inferences and evidence must be disregarded. *State v. Strong*, 484 S.W.2d 657, 661 (Mo.1972). Review is limited to whether substantial evidence supports the verdict and whether there is sufficient evidence from which reasonable persons could have found the defendant guilty. *State v. Longmeyer*, 566 S.W.2d 496, 499 (Mo.App. 1978). Substantial evidence means evidence from which the trier of fact reasonably could find the issue in harmony therewith. *Kansas City v. Oxley*, 579 S.W.2d 113, 115 (Mo. banc 1979).

■ The elements necessary to constitute attempt are the intent to commit a crime, an overt act toward its commission, failure of consummation, and the apparent possibility of commission. *State v. Olds*, 603 S.W.2d 501, 508 (Mo.1980). The elements of failure of consummation, apparent possibility of commission and an overt act are not raised on appeal. Defendant contends, however, that the State failed to make a submissible case on the element of his intent to commit the crime, in this case, second degree robbery.[1] We disagree.

■ Because the element of intent is generally not susceptible to direct proof, it may be established by circumstantial evidence or inferred from surrounding facts. *State v. Moon*, 602 S.W.2d 828 (Mo.App.1980). *State v. Moon*, applied this rule to facts remarkably similar to those of the instant case.

In *Moon*, defendant Moon entered a bank with his hand in the pocket of his jacket. He caused Ms. Foland, a bank teller, to believe he carried a gun after he "pointed it [his hand] up" at her through his pocket and "moved it around" at her. He asked her for money and stated several times that he was "not bullshitting" her. When she started to open the money drawer, the defendant told her he was "just kidding" and that he did not want her "to say anything to anybody." The defendant then pulled his hand out of his pocket, revealing he was not armed. Until that time, Ms. Foland had believed the defendant was serious about having a gun and wanting to rob the bank.

---

1. A person commits second degree robbery when he forcibly steals property. § 569.030, RSMo 1994. A person "forcibly steals" when, in the course of stealing, he uses or threatens the immediate use of physical force upon another person for the purpose of (a) preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or (b) compelling the owner of such property or another person to deliver upon the property or to engage in other conduct which aids in the commission of the theft. § 569.010(1), RSMo 1994.

Shortly after this incident, the defendant approached another teller's window and began talking with the teller, Ms. Gregory. The defendant told Ms. Gregory that he had a gun in his pocket, but when she asked to see the gun, he refused to show it to her. When Ms. Gregory motioned to her supervisor for help, the defendant removed his hand from the pocket and she noticed he was unarmed. The defendant was arrested and charged with attempted robbery.

Affirming a verdict of guilty, the Court of Appeals held that, even though the defendant had not made an attempt to actually take any money, a culpable state of mind could be strongly inferred from the fact that the defendant gave the appearance of being armed and from his statements that he wanted money and that he was "not bullshitting."

Likewise, in this case, the jury could have inferred a culpable state of mind from Defendant's statements and conduct. As set forth in detail above, Defendant walked into the barber shop and exclaimed, "stick 'em up" or "set 'em up." He also repeatedly stated that he had a .22 in his pocket and held his hand in his pocket, pointing it at Mr. Robertson and Mr. Larabee as if it held a gun. Both men testified that they believed Defendant intended to rob the barber shop. If this testimony were believed by the jury, as it apparently was, it fully supported the inference that Defendant intended to rob the barber shop.

Defendant also argues that the facts that (1) he did not flee when the police arrived at the barber shop, and (2) he never made an actual move to take the shop's money, precluded a finding that he had the requisite intent to rob the barber shop. We disagree.

While flight would certainly have been evidence of guilt, Defendant's failure to flee did not preclude guilt; it was simply relevant evidence which the jury was properly permitted to consider in determining the issue of Defendant's intent to commit the crime. *See State v. Berryhill*, 673 S.W.2d 444, 445 (Mo. App.1982). Indeed, as noted above, the defendant in *State v. Moon* also failed to flee from the bank immediately, yet the court held the jury could infer an intent to rob the bank from the defendant's other statements and actions.

Similarly, as the Missouri Supreme Court noted in *State v. Thompson*, 414 S.W.2d 261 (Mo.1967), Defendant's failure to actually attempt to take or demand money does not *preclude* a jury verdict that Defendant had the intent to rob the store; it was simply a factor for the jury to consider. As *Thompson* persuasively pointed out:

> If we were to adopt defendant's reasoning we would establish the rule that proof of an actual physical move to take possession of property of the intended victim would be necessary to support a conviction of attempted robbery. Necessarily, we would say that even though the would-be robber stated, "Stick 'em up" or "This is a robbery" or "Give me your money," and accompanied his statement by force or putting the victim in fear, still he would not be guilty of attempted robbery if there was no evidence of a physical move to take possession of property. . . . We do not agree.

*Thompson*, 414 S.W.2d at 264.[2]

As is evident, the facts of the instant case are nearly identical to the facts in the hypothetical posed by the Supreme Court in *Thompson*. The Supreme Court clearly said that those facts would support a verdict that the defendant intended to rob the victim.[3]

**2.** *See also State v. Burton*, 618 S.W.2d 199 (Mo. App.1981) (fact that assailants asked victim for his money, pointed a gun at him and shot him was sufficient evidence of an intent to rob the victim even though the assailants left the scene without actually attempting to take victim's money).

**3.** We note that, for similar reasons, the failure to actually demand or take money from the victim will not prevent a finding of commission of an overt act toward commission of the crime. This element is met by proof that defendant, with the

purpose of committing the offense, does any act which is a "substantial step" toward the commission of the offense. § 564.011.1, RSMo 1994. A "substantial step" is conduct which is strongly corroborative of the firmness of the actor's purpose to complete the commission of the offense. *Id.*

Here, Defendant's statement of "stick 'em up" and claim that he had a .22 in his pocket, in combination with his pointing of something at Mr. Robertson and Mr. Larabee through his pocket in such a manner as to cause them to

Defense counsel was free to argue below, as he did, that Defendant did not really intend to rob the barber shop, and that Mr. Robertson would not have continued to cut his customer's hair, and would not have asked Defendant to show him the gun, if he had really believed that Defendant intended to rob him. However, the jury clearly resolved this issue against Defendant, as it was free to do on the evidence presented.

### B. *The Erroneous Admission of Evidence of Other Misconduct Did Not Require a Mistrial.*

■ In his second point on appeal, Defendant argues that the trial court erred in failing to grant a mistrial due to the improper admission of certain testimony offered by Officer Wilson while explaining why he had gone to the barber shop to investigate Defendant. Defense counsel, anticipating that Officer Wilson might get into improper areas during this testimony, requested during a sidebar conference that the judge order the State not to inquire about other uncharged crimes. The State indicated that Officer Wilson would testify that a woman reported a man approaching her front door and demanding money. She gave a description of the man and when Officer Wilson drove past the barber shop, he saw an individual meeting that description inside.

After hearing this account of the anticipated testimony, the trial court stated:

> I don't want you to get into the substance of the call; but you had a call pertaining to an individual and a description of the individual was this. And you may lead the witness to get into that, but I don't want to get into evidence of another crime.

The following exchange then took place:

> Q: Officer Wilson, what was the subject of the dispatch?
>
> A: A suspicious subject in the area that had approached a lady living on—
>
> MR. ERNST: Judge, I am going to object. Here we go.

believe that Defendant was or might be pointing a gun at them, constituted a substantial step toward commission of the robbery. *See State v. Logan*, 809 S.W.2d 135, 137 (Mo.App.1991) (sub-

THE COURT: Go ahead and lead the witness, please, in this area.

> Q: Did you reach [sic] a dispatch that there was a suspicious individual at South Nineteenth demanding money?
>
> A: Yes, I did.

Defendant's counsel immediately approached the bench and requested a mistrial. The court pointed out that "[t]hat was exactly his objection. What's the point of bringing that out? All you need to bring out was that he had a description of an individual to explain why he would go back to the barber shop." Counsel for the State explained that he had misunderstood what he was permitted to ask Officer Wilson.

The court appeared to accept that the question was the result of good faith error, and asked both counsel what could be done to correct the error. He then agreed to instruct the jury to disregard the statement by counsel, and offered to do "anything else you would like for me to give short of a mistrial," but denied Defendant's request for mistrial.

The trial court then gave the jury an instruction which told the jury that the call Officer Wilson was asked about was not what Defendant was charged with and should be disregarded. He told them that the testimony was only relevant to explain why Officer Wilson was interested in Defendant and had returned to the barber shop. Officer Wilson then testified, in detail and without objection, concerning the call he had received about a person matching Defendant's description and why he went to the barber shop to see if Defendant was the person he was seeking when he could not find that person at the location originally reported to him. Defense counsel cross-examined Officer Wilson regarding these points as well.

On appeal, Defendant argues that the trial court erred in failing to grant a mistrial. He suggests that the evidence of a request for money from the woman was inadmissible, irrelevant, and unduly prejudicial to him. He argues that the testimony did not relate

stantial step shown by displaying what the victim perceived to be a gun coupled with the defendant's admission that he intended to rob the victim).

to any issues of the case but rather, while not expressly identifying Defendant, induced the jury to believe Defendant had engaged in other misconduct.

Evidence of crimes other than the crime charged is not admissible if it goes to proof of an independent crime and has no legitimate tendency to directly establish the defendant's guilt of the crime charged. *State v. Laws*, 668 S.W.2d 234, 237–238 (Mo.App. 1984). The evidence of a request for money from another woman did not necessarily indicate a prior crime had occurred. The woman could have been complaining about a lawful solicitation for some cause. However, the jury could also have inferred that the individual was trying to rob the woman, or perhaps that he was illegally panhandling. Moreover, because the evidence indicated that this person matched Defendant's description, the jury may have inferred that Defendant and this individual were one and the same person. For this reason, the trial court properly determined that the evidence of the request for money from the woman should not have been admitted.

However, we do not believe that the trial court abused its discretion in holding that the admission of this evidence was not so prejudicial as to require a mistrial. The declaration of a mistrial is a drastic remedy which should be granted only in those circumstances when the incident is so grievous that the prejudicial effect can be removed in no other way. *State v. Parker*, 476 S.W.2d 513, 515–16 (Mo.1972). An appellate court reviews the trial court's decision not to declare a mistrial only for abuse of discretion. Ordinarily, the trial court acts within its discretion and cures error in the admission of evidence by withdrawing the improper evidence and instructing the jury to disregard it, rather than declaring a mistrial. *Laws*, 668 S.W.2d at 238.

That is exactly what occurred here. As noted above, only a single question was asked referring to the request for money. Moreover, the trial court accepted that the evidence was offered in good faith, albeit in error, to help explain Officer Wilson's presence at the barber shop.

In addition, the prosecution and defense counsel then questioned Officer Wilson in some detail about the fact that he was going to the barber shop to investigate Defendant because Defendant matched the description of a suspicious individual who had been the subject of a previous dispatch. This testimony came in without objection. Even without Officer Wilson's stricken testimony about a request for money from a woman, the jury could have inferred that a possible criminal incident had occurred involving a person matching Defendant's description or else a person of that description would not have been the subject of a dispatch and Officer Wilson would not have been looking for him.

We believe that, considered in context, the trial court did not err in concluding that the erroneous use of the single additional phrase saying the cause of the dispatch had been a request for money from a woman could be cured by an instruction to the jury to disregard the question, and was not so prejudicial as to require a mistrial.

For these reasons, we affirm Defendant's conviction.

All concur.