**552**

In the Matter of the Formation of the Community Care Nursing Home District.

OPPONENTS TO the PETITION FOR FORMATION OF the COMMUNITY CARE NURSING HOME DISTRICT, Appellants,

v.

PETITIONERS FOR FORMATION OF COMMUNITY CARE NURSING HOME DISTRICT, Respondents.

No. KCD 28880.

Missouri Court of Appeals, Kansas City District.

Feb. 27, 1978.

Motion for Rehearing and/or Transfer Denied April 3, 1978.

Richard J. Blanck, Conway & Blanck, Boonville, for appellants.

Inglish & Calhoun, John W. Inglish, J. Rockne Calhoun, California, for respondents.

Before SHANGLER, P. J., WASSERSTROM, J., and MASON, Special Judge.

SHANGLER, Presiding Judge.

A petition for the formation of a nursing home district was brought in the County Court of Cooper County under the provisions of §§ 198.200 to 198.350, RSMo 1969. In accordance with the procedures of statute, the court conducted a hearing after notice and determined the petition was not proved by competent and substantial evidence and so did not support a call for election. On review the circuit court reversed the decision of the county court, determined that the proof on the petition met the requirements of law, and ordered that an election be called.

The appellants are electors resident in the townships within the proposed district who object to the petition. On this appeal the objectors contend the circuit court was without power to review the county court judgment because the transcript of that proceeding was not filed within the statutory time. They contend also that there was not sufficient proof to support elements of the statutory proceeding.

As to the first point: § 49.230, RSMo 1969, provides that appeals from quasi-judicial orders of county courts shall be made within ten days of decision, and that within thirty days after the appeal is taken [unless the matter be continued for cause] "the *county court . . . shall certify to the circuit court* all documents and papers on file in the matter, together with *a transcript of the evidence,* decision, findings and order, which become the record of the cause." [Emphasis added] Objectors read

*In Re Village of Lone Jack*, 419 S.W.2d 87 (Mo.banc 1967) to construe § 49.230 to place the onus of the *certification* of the record of the County Court proceeding on the party who seeks the review. That case determines, not the appeals procedure of § 49.230, but the procedure of § 49.225 for a *stenographic record.* That case held [l. c. 90] that a judicial proceeding by the Court could not be reviewed without a transcript of the evidence—and that since § 49.225 makes such a record as available to one party as to the other, a litigant who seeks review under the Administrative Procedure and Review Act [Chapter 536] must ensure the stenographic preparation of the evidence.

The objectors excerpt from the opinion [l. c. 90]:

" . . . Parties desiring that their interests be reviewed in accordance with § 536.140 will see to it that the full record necessary for proper review is certified to the initial reviewing court . . ."

to mean that an appellant from a decision of the county court must not only prepare the record but ensure its certification by the county court to the circuit court within thirty days of appeal. The plain language of § 49.230, however, directs that the county court shall certify the record to the circuit court, and indeed, it would be neither decorous nor effective to impose on a litigant the initiative to authenticate a judicial proceeding. The question posed, and decided, in *Lone Jack* was merely that the party who seeks review from a quasi-judicial proceeding before the county court must make provision for the transcription of the evidence so that a proper record can be certified to the court of review. In fuller context—as the excerpt explains—there can be no significant determination whether an administrative order is supported by competent and substantial evidence in the absence of a record which fully shows the proceedings.

■ The dispute as to whom the law rests the duty to certify the record to the circuit court arises because that procedure was not perfected within thirty days after

the appeal was taken—the statutory period. The proponents of the petition, who suffered the adverse decision of the county court, gave a timely order for the transcription of the evidence and thereafter obtained an extension of time for that purpose from the circuit court with jurisdiction of the appeal. The transcript and other documents in the cause were before the county court which, nevertheless, neglected to certify the record to the circuit court within the time directed by law. It was not until proponents of the petition—then appellants—sued out a writ of mandamus against the county court that the certification was perfected to the court of review. The law requires only that an appellant provide for the transcription of the testimony of witnesses, a duty the proponents of the petition acquitted. The initiative to certify the full record was with the county court. The [then] appellants cannot be charged with the intransigence to perform a duty the law imposes upon another.

The objectors attempt two other points which reduce to the basic contention that the proponents failed to prove two elements of the petition: the municipalities within the proposed area and the assessed valuation of the proposed district. There is no issue as to the three other components of proof required by § 198.210 to form a nursing home district: the name, a description of the territory to be embraced, and the population—which shall not be less than two thousand inhabitants.

■ There was no attempt to prove that Pilot Grove, Otterville and Blackwater, the municipalities the petition describes to fall within the proposed district, are sited there. There was competent proof by metes and bounds, however, that Blackwater, Pilot Grove, Lamine, Clear Creek, Lebanon and Otterville townships are within Cooper County and embraced in the proposed district. An appellate court may take judicial notice from the County Subdivisions, Townships and Places depiction of the 1970 Census [Exhibit No. 2] that Pilot Grove, Otterville and Blackwater are municipalities within the townships of the same designations.

The statute requires also that the petition shall set forth "the assessed valuation of the area which shall not be less than $2,500,000". The proponents pleaded $10,158,852 for the area encompassed by the petition. The objectors contend that there was no substantial evidence for that critical element of proof and so the requirements of statute were not met and the judgment of the circuit court which sustained the petition and called an election was an error of law.

The proponents undertook this salient proof by the testimony of Chamberlin, former Assessor of Cooper County. All their other evidence on this issue was essentially supportive and not independently probative of the assessed valuation of the area proposed for the nursing home district. The objectors gave no evidence in rebuttal, so the decision on the petition rests altogether on the competency of the Chamberlin testimony.

The method employed to prove the assessed valuation of the proposed nursing home district proceeded on this logic:

The boundary of the proposed district encompassed six townships: Lebanon, Pilot Grove, Otterville, Clear Creek, Blackwater and Lamine. These townships [and hence the proposed nursing home district] fell within three school districts: Pilot Grove, Otterville and Blackwater. The tax rolls were not classified by township but were arranged by school district, so that the actual taxes apportioned and paid over to each school district were readily shown. The witness Chamberlin, who was called by the proponents for this testimony, concluded that although an assessed valuation of the six townships which constituted the proposed nursing home district was possible of precise determination, because the tax records were not arranged as to township, that procedure would be tedious. He concluded also that since the statute required only $2,500,000 be proved for an area which—as former Assessor—he knew far exceeded that base, he could properly use the readily known tax receipts from the three school districts which the six townships [and hence the proposed nursing home district] fell to extrapolate the proportionate value attributable to the six townships and so come to a valid assessment for the proposed district.

On these premises, witness Chamberlin received from the deputy county clerk the contents of tax records [1] verbally "certified" to him as the receipts apportionable to the three school districts within which the six townships lay. These tax books contained the records for entire Cooper County and had been received by the county clerk from the county assessor. Chamberlin gave over to Ms. Scott, then County Collector, the tax totals payable to the three school districts, verbally accounted to him by the deputy county clerk and, by a formula not in dispute here, Ms. Scott calculated the assessed value of the three school districts at $11,158,852. From this base, witness Chamberlin took into account that the area of the three school districts exceeded that of the six townships and made allowance for the overlap by the subtraction of $1,000,000 from the assessed valuation of

1. The tax records by which witness Chamberlin attempted to prove the assessed valuation of the proposed district were Railroad and Utility Assessment and Tax Book [Exhibit No. 4], the Personal Property Tax Book [Exhibit No. 5] and the Real Estate Tax Book [Exhibit No. 6]. These tax books were for entire Cooper County, classified as to school district, but not as to township. The status of each exhibit as evidence is doubtful, because each of them was received for some "limited purpose" or with other proviso. The school district map [Exhibit No. 9], intended to corroborate the extrapolation by witness Chamberlin of the value between the townships-school districts overlap and so derive the assessed valuation of the proposed nursing home district, was received "subject to its irregularities". There were no findings and so no indication of the effect given to this evidence by the County Court—or for that matter by the Circuit Court which determined the evidence for the petitioners as a matter of law. These tentative rulings on the exhibits were made by the Cooper County prosecutor who—presumably on his understanding of the duty imposed on his office to the county court by § 56.070, RSMo 1969—not only exercised the judicial function as to which evidence was admissible, but ruled objections and also systematically cross-examined witnesses for the proponents. This practice was not contested on appeal.

the school districts, and so derived his proof that the value of the proposed area was $10,158,852 as pleaded. The witness acknowledged that the extrapolation of value for the area outside the townships was merely an estimation.

The proponents of the petition argue that the law does not require a precise proof of assessed valuation, which although possible is not feasible, but that substantial compliance with the statutory elements suffices. This argument confounds evidence with proof. Evidence is merely the means to proof. Proof results from evidence which convinces the mind of an ultimate fact. *Wicecarver v. Mercantile Town Mutual Ins. Co.,* 137 Mo.App. 247, 117 S.W. 698, 702[11] (1909); 20 Am.Jur.2d Evidence, § 2. Not all that convinces and so tends to prove an issue constitutes legal evidence, however; it must also be admissible in a court of justice. Hearsay evidence is of a species not competent to prove a fact, and therefore inadmissible. *Shaw v. Terminal Railroad Association of St. Louis,* 344 S.W.2d 32, 35[1] (Mo.1961). That is because such evidence derives value, not from the credit of the witness upon the stand, but—at least in part—from the veracity and competency of some other source not open to cross-examination. *State v. Gorden,* 356 Mo. 1010, 204 S.W.2d 713, 714[3] (1947). The case for the proponents of the petition rests on a hearsay, and therefore fallible, postulate: that the verbal recount to witness Chamberlin by the deputy county clerk of the tax record receipts payable to the three school districts was a source of lawful proof to calculate the assessed valuation of the school districts and, ultimately, the extrapolation of the value for the proposed nursing home district. The validity of this evidence did not rest altogether on the trustworthiness of witness Chamberlin, but on the veracity of the deputy county clerk and, primarily, upon the records which her descriptions purported to reflect. That testimony was incompetent hearsay, objected to as such, and was without probative effect.

Although county courts are no longer judicial tribunals in the constitutional sense but have become administrative bodies [Article 5, § 1; Article 6, § 7, Mo. Const.1945; *Rippeto v. Thompson,* 358 Mo. 721, 216 S.W.2d 505, 507[3, 4] (1949)], the fundamental rules of evidence appertain when the courts act in the judicial function. In that function, hearsay evidence does not constitute competent and substantial evidence essential to the validity of the final decision. *State ex rel. Horn v. Randall,* 275 S.W.2d 758, 763[7–9] (Mo.App.1955).

The proponents failed another proof: there was no substantial evidence as to the contours of the three school districts and how those bournes differed from those of the proposed nursing home district. The boundary of the six combined townships were shown by metes and bounds. The boundary of the three school districts were shown by an exhibit [No. 9] which was admitted "subject to its irregularities". There was no evidence—other than that deducible by translation of metes and bounds of the townships description to the representation by map of the school districts—of the extent of the overlap between the two areas.

We agree with the proponents that the law does not require perfect proof, but only that proof by the most certain evidence the circumstances admit. We agree also that under these circumstances, where the precise proof of assessed valuation of the proposed district would require a laborious, line by line calculation of each taxpayer of the component townships, the method of proof by extrapolation adopted by the proponents—if based on competent evidence—suffices to reach the ultimate fact with reasonable certainty. The basic evidence upon which the proof of the petition rests, however, is hearsay and substitutionary, even though the documentary best evidence was available. It is apparent from the proceedings that competent evidence to prove the assessed valuation of the proposed nursing home district is available to the proponents from tax records and official descriptions of the encompassed townships and school districts. We remand the cause to afford them opportunity to prove the petition.

Accordingly, the judgment of the circuit court which found, as a matter of law, that the petition was proved by substantial and competent evidence on the whole record is reversed with directions that the cause be remanded to the County Court of Cooper County for a new trial on the petition.

All concur.