**STATE of Missouri,
Plaintiff-Respondent,**

v.

**James Raymond REAGAN,
Defendant-Appellant.**

No. 45289.

Missouri Court of Appeals,
Eastern District,
Division Two.

June 14, 1983.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 15, 1983.

Application to Transfer Denied
Aug. 16, 1983.

Charles M. Shaw, Clayton, for defendant-appellant.

John Ashcroft, Atty. Gen., Kristie Green, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

SNYDER, Presiding Judge.

Defendant was found guilty by a jury and convicted of assault in the first degree and possession of a bomb in violation of §§ 565.050 and 571.100 RSMo.1978. He was sentenced to ten years on the assault count and five years on the possession count, the sentences to be served consecutively. The judgment is affirmed.

Appellant raises six points of error. He contends the trial court erred in (1) admitting double hearsay testimony; (2) failing to instruct the jury on alibi; (3) failing to give a jury instruction based on MAI–CR2d 2.12; (4) failing to grant a new trial based on gross prosecutorial misconduct in the cross examination of a defense witness; (5) permitting evidence of crimes other than the ones for which appellant was charged; and (6) permitting prosecutorial misconduct and "gross improprieties" by the prosecutor throughout the trial.

On the morning of July 8, 1980, Paul J. Mertens, a plainclothes investigator for the Missouri State Highway Patrol in Rolla, Missouri, drove an unmarked, blue and white 1980 Buick highway patrol vehicle to the scene of a reported burglary at the west end of Rolla. After arriving at the scene of the burglary, a Rolla deputy sheriff who had ridden along with Mertens, noticed something attached by a pair of visegrips to the frame of the Buick beneath the front passenger position.

Closer investigation revealed that an explosive device, a bomb, had been attached to the car. The bomb was a well made, sophisticated device, designed to be detonated when the car's engine warmed up to between 125° to 130° fahrenheit. Attached to the catalytic converter of the Buick was a thermostat which would close the circuit between a nine volt battery and a blasting cap, activating the blasting cap, which in

turn would detonate the bomb's explosive gel. Fortunately for Mertens the bomb was inoperative because the wires from the blasting cap were unconnected.

The device was sent to the FBI laboratory in Washington, D.C., along with some items seized from appellant's auto body shop. Tests run by the FBI laboratory proved that the bomb was made with appellant's tools and from materials found in appellant's workshop.

Furthermore, some of the components of the bomb had been purchased by appellant. The thermostat was purchased at an electrical supply company. Tarp straps used to hold the bomb on the automobile were purchased from a Rolla hardware store. Appellant also instructed Warren "Sam" Fish to purchase explosives for him.

In addition, appellant's auto body shop was under surveillance by Mertens because personnel of the highway patrol suspected appellant of being involved with stolen cars.

Appellant, however, was out of town from July 4, when he left on a vacation, until July 17, 1980, when he was extradited from Minnesota. A Missouri highway patrol officer testified that he saw appellant on the morning of July 8, 1980, the day the bomb was found, on a boat dock in Ludington, Michigan.

James Murphy admitted that he put the bomb on Mertens' patrol car. Roger Wagoner paid Murphy $1,000 to kill Mertens by placing the bomb on the car. Murphy also testified that Wagoner had said Reagan had built the bomb and wanted the bombing to take place while Reagan was out of town.

Additional facts will be recited when needed in the discussion of the appellant's points relied on.

■ Appellant first contends that the trial court erred when it admitted some of the testimony of witness Murphy, who testified that one Wagoner had told him certain things about Reagan and the bomb. Wagoner did not testify. Appellant's objection was that the testimony was hearsay or double hearsay and that no conspiracy was proved. The point is without merit.

Although Murphy's testimony could be characterized as simple hearsay, with Murphy relating that Wagoner had named the defendant as the man who wanted the bombing device planted on Mertens' patrol car, this court believes it is more appropriate to label the testimony as double hearsay.[1] In effect, Murphy was testifying that Wagoner had said that defendant Reagan had said he, Reagan, wanted the bomb installed after he was out of town.

The common law rule is that "[m]ultiple hearsay is, of course, even more vulnerable to all the objections which attach to simple hearsay, and it seems that if it is to come in at all, each of the out-of-court statements must satisfy the requirements of some exceptions to the hearsay rule." McCormick on Evidence § 246 (2d Ed.1972); see also *Gennari v. Prudential Ins. Co. of America,* 335 S.W.2d 55, 62–63[8] (Mo.1960).

The federal rules of evidence also embody the common law analysis of multiple hear-

---

1. The questioned testimony was elicited by the state on direct examination of Murphy:

"Q: Now, on that second meeting, did you ask him (Wagoner) when he wanted the bomb planted?
A: Yes, sir, I did.
Q: And what did he tell you?
A: He told me he'd let me know, that they had some arrangements yet—to make yet, and the man that was paying for the job—or had the job done—
Mr. Shaw: Judge, I object to that . . .
The Court: . . . The objection will be overruled.
Q: . . . Tell the jury what Mr. Wagoner said about when that bomb could be planted.

A: As soon as the man was—that was hiring me to do the job could make an alibi and be out of town.
Q: Did he name that man?
A: He did.
Q: What name did he tell you?
A: Jim Reagan

Mr. Shaw: Let me say that again the defense wishes to object to any statements by this witness as to what somebody named Wagoner told him with reference to the defendant . . .

The Court: . . . The Court will allow the question on the co-conspirator theory."

say problems. See Fed.R.Ev. 805. "... Rule 805 paves the way for receipt of double or multiple hearsay if each hearsay element, standing alone, would be admissible despite its hearsay nature." 4 Louisell, David W. & Mueller, Christopher B., Federal Evidence § 496 (1980).

Thus, the first issue is whether the first link in the hearsay chain, what Murphy testified that Wagoner said, meets a recognized exception to the hearsay rule. Respondent contends, and this court agrees, that the statements of Wagoner are admissible as statements of a co-conspirator.

■ If a conspiracy has been independently shown to exist, then statements of a co-conspirator, made in furtherance of the unlawful combination, are admissible against another co-conspirator who was not present when the statements were made. See *State v. Deyo,* 358 S.W.2d 816, 824[12] (Mo.1962); *State v. Kennedy,* 177 Mo. 98, 75 S.W. 979, 984 (1903); McCormick on Evidence § 267 (2d Ed.1967); 4 Wigmore, Evidence § 1079 (Chadbourn rev. 1972); Fed.R.Ev. 801(d)(2)(E).

To meet the co-conspirator exception, the state was obligated to demonstrate, by evidence independent of Murphy's hearsay testimony, that a conspiracy existed between Wagoner and appellant. However, it was incumbent upon the state to demonstrate the conspiracy only by a preponderance of the evidence and not beyond a reasonable doubt. See *United States v. Bell,* 573 F.2d 1040, 1044[3] (8th Cir.1978); 4 Louisell, David W. & Mueller, Christopher B., Federal Evidence § 427 (1980); McCormick on Evidence § 267 (2d Ed.1978 Supp.).

The evidence of a conspiracy between Wagoner and appellant to place the bomb on Mertens' car included the following: (1) the bomb which was attached to Cpl. Merten's car was built in appellant's auto body shop; (2) appellant purchased some items identical to those which were found in the bomb; (3) appellant and Wagoner each had a motive for bombing Mertens' car; (4) appellant and Wagoner were often observed together; and (5) Murphy testified that he had been hired by Wagoner to plant the bomb on Mertens' patrol car. Sufficient evidence existed to find that Wagoner and appellant were co-conspirators.

In addition to establishing a conspiracy, the state must also show that the statements by Wagoner were in furtherance of the conspiracy. The very statement that Wagoner would let Murphy know when to plant the bomb because Wagoner still had arrangements to make, establishes the "in furtherance" requirement because the statement assumes that a bomb would be planted.

The second issue is whether the second link in the double hearsay chain meets an exception to the hearsay rule. The second hearsay statement consists of Wagoner stating that appellant said that the bomb should not be attached to Mertens' automobile until appellant was out of town. The statement by appellant was an admission of a party opponent. Admissions by a party opponent are admissible either as an exception to the hearsay rule or because such admissions are not considered hearsay. See *State v. Engleman,* 634 S.W.2d 466, 480[21, 22] (Mo. banc 1982); Fed.R.Ev. 801(d)(2); McCormick on Evidence § 262 (2d Ed.1972).

The double hearsay testimony of Murphy was thus admissible because each hearsay statement met an exception to the rule barring hearsay testimony. "Where the various links in the hearsay chain satisfy different exceptions, the condition prescribed by [Fed.R.Ev.] 805 is ... satisfied, and the hearsay doctrine does not require exclusion of the final statement." 4 Louisell, David W. & Mueller, Christopher B., Federal Evidence § 496 (1980); see also *Gennari v. Prudential Ins. Co. of America, supra* (business records and admissions of a party opponent); *United States v. Garris,* 616 F.2d 626, 629–630 (2d Cir.1980) cert. den. 447 U.S. 926, 100 S.Ct. 3021, 65 L.Ed.2d 1119 (1980) (declaration against interest and admissions of a party opponent).

The cases cited by appellant *State v. Gorden,* 356 Mo. 1010, 204 S.W.2d 713 (1947); *In re Community Care Nursing Home District,* 564 S.W.2d 552 (Mo.App.1978); and

*State v. Hankins,* 612 S.W.2d 438 (Mo.App. S.D.1981) are not factually similar and do not require a ruling in favor of appellant on this point which is denied.

■ In appellant's second point relied on he asserts the trial court erred in its refusal to submit an alibi instruction requested by appellant. Instruction No. 6, the verdict directing instruction for Count II required the jury to find that the appellant on or about July 8, 1980 had a bomb in his possession or under his control. The information charged him with having a bomb in his possession on or before July 8, 1980. The evidence showed that appellant was in Michigan on July 8, 1980 when the bomb was found on the State highway patrolman's automobile. Therefore, appellant argues, the refusal of the trial court to give an alibi instruction was prejudicial error. The point is without merit.

The state's evidence on the possession count, considered in the light most favorable to the jury verdict, showed that prior to the date of July 8, 1980 appellant had possession of the bombing device. There was proof that the bombing device was manufactured in appellant's body shop and testimony that appellant had made statements that he had built the bomb and delivered it to another person. The evidence showed that appellant was in town prior to and including July 3, 1980. There was no alibi evidence for July 3, 1980 and the time prior to July 3.

The verdict director instruction on Count II included the phrase "under his control" as well as "in his possession." Therefore, the jury could have found appellant had controlled the bomb even though he was in Michigan on the day the bomb was found.

Aside from the control factor, the issue is whether appellant's possession of the bomb on July 3, 1980 is within the period encompassed by the instructional phrase "on or about July 8, 1980." If so, then appellant had a possible alibi for only part of the time during which he could have committed the crime.

■ Few cases have discussed the parameters of the phrase "on or about" a given date. In *State v. Armstead,* 283 S.W.2d 577, 582 [11, 12] (Mo.1955), the court stated that "on or about" is not inclusive of a week's variance in time. In *Geitz v. Blank,* 108 S.W.2d 1066, 1069[9] (Mo.App.1937) the court stated that "on or about" may mean two or three days before or after the date recited. However, no Missouri case has decided whether "on or about" encompasses five days' variance. This court holds that "on or about" is inclusive of five days' variance in the case under review given the fact of appellant's continuous criminal activity (as the jury could have found under Instruction No. 6) during the period from prior to July 4, 1980 when appellant left town to July 8, 1980 when the bomb was found on the patrol car.

Appellant's evidence accounted for his presence during only a part of the time in which a crime of possession could have been committed and it will not support the submission of an alibi instruction. See *State v. Kimball,* 624 S.W.2d 158, 159[1] (Mo.App. 1981); *State v. Floyd,* 598 S.W.2d 517, 519[1] (Mo.App.1980). There was no defense evidence to support an alibi for the period of time in which the state's evidence showed the bomb was constructed and in the possession of appellant.

■ The verdict directing instruction on Count I of the charges against appellant required a finding of guilty if the jury found that appellant aided certain persons in attempting to kill or cause serious physical injury to Trooper Mertens by attaching a bomb containing an explosive substance to the underside of his automobile. Because appellant was charged with first degree assault by aiding others in attaching the bomb and attempting to kill or cause serious physical injury to Corporal Mertens, the absence of appellant at the scene when the bomb was attached or when it was discovered was immaterial. *State v. Newberry,* 605 S.W.2d 117, 121[5] (Mo.1980).

For the reasons given, appellant's second point is denied as it applies to both Count I and Count II.

■ Appellant next accuses the trial court of instructional error. The court gave Instruction No. 7, based on MAI–CR 2d 2.10. Appellant charges the trial court did not follow the Notes on Use under that instruction and submit a verdict directing instruction based on MAI–CR 2d 2.12.

Instead, the trial court submitted a verdict director, Instruction No. 5, based on a combination of MAI–CR 2d 19.02 and 2.12. Appellant argues that Instruction No. 5 was erroneous because it failed to set out the required elements of the crime. He claims that the giving of Instruction No. 5 conflicts with Instruction No. 7. The point is without merit.

The Notes on Use to MAI–CR 2d 2.10 state in part that in all cases which do not involve a charge of conspiracy, "... MAI–CR 2.10 and MAI–CR 2.12 must be given, whether requested or not, when there is any evidence that the defendant acted with others, either as an active participant or one who aided, agreed to aid or attempted to aid another in planning, committing, or attempting to commit an offense." MAI–CR 2d 2.10, Notes on Use 3.[2] Instruction No. 5, the state's verdict director on assault in the first degree, was based on MAI–CR 2d 19.02, but included that portion of MAI–CR 2d 2.12 dealing with aiding and abetting.

Thus, Instruction No. 5 did not conform to MAI–CR 2d 2.10 Notes on Use 3 because it contained a blend of MAI–CR 2d 19.02 and 2.12 rather than a pure version of MAI–CR 2d 2.12. However, no instructional error occurs where, as here, the verdict director combines the elements of one verdict director with the second paragraph of MAI–CR 2d 2.12. See *State v. McIlvoy,* 629 S.W.2d 333, 336–337 (Mo. banc 1982).

Appellant in his brief suggests a form of MAI–CR 2d 2.12 as the verdict director which should have been given to the jury. The suggested instruction was not requested by appellant during the trial, but even so it was not a proper instruction under the evidence in this case because it includes paragraphs relating to an additional offense which are not applicable here. Therefore, appellant's third point must be denied.

■ The appellant next complains of what he terms "an obvious and gross bit of prosecutorial misconduct." He specifically alleges that it was error to permit the prosecutor to ask a defense witness whether he was ever convicted of a charge of armed bank robbery. No objection was made by defense counsel at the time the question was asked and answered and the point must be considered only on a plain error basis under Rule 29.12(b). There was no manifest injustice or miscarriage of justice and the point is denied.

Little need be said about this point. The only case cited by appellant in support of his argument is *State v. Guernsey,* 577 S.W.2d 432, 435 (Mo.App.1979). That case is not apposite. It concerns an allegedly prejudicial argument in the rebuttal portion of the state's summation. True, it related to prior criminal activity, but not that of a defense witness but that of the defendant. In *Guernsey* the offending information was not elicited on cross-examination. The cases are dissimilar.

■ In his next point appellant makes the general assertion that a large portion of the prosecutor's evidence was taken up with crimes other than those charged against the appellant and accuses the trial court of error in allowing evidence of other crimes to be adduced over the objections of appellant. Appellant does not point out specifically what rulings of the trial court he is complaining about, other than to say generally that evidence of other crimes is not admissible absent certain circumstances, and that appellant was prejudiced by the admission of evidence of other crimes and by innuendo. The point is denied.

---

**2.** The old MAI–CR 2d 2.10 and 2.12 were in effect at the time of the trial in November of 1981, although the Supreme Court's order of January 14, 1981, effective January 1, 1982 withdrew MAI–CR 2d 2.10 and promulgated a new MAI–CR 2d 2.12 to be used effective January 1, 1982. Since that time the January 14, 1981 Supreme Court order has been rescinded and the old MAI–CR 2d 2.10 and 2.12 reinstated.

In oral argument appellant's counsel emphasized the claimed error in admitting evidence of, not other crimes committed by defendant, but evidence of irrelevant and immaterial prejudicial matter containing innuendo, and the attempt by the prosecution to imply guilt by association. Unfortunately the only references in appellant's brief to specific rulings of the trial court were an objection to a question by the state asking why Corporal Mertens had been conducting surveillance at the defendant's shop.

The state in a conference at the bench said they wanted to elicit this information in order to prove motive. The court overruled defendant's objection and motion for a mistrial and permitted Corporal Mertens to testify that he suspected the defendant of rebuilding salvaged cars with stolen parts. He said that was why he had appellant's body shop under surveillance. The witness did not testify as to any specific information that he had.

Appellant also contends it was error to permit identification of certain people who were acquaintances of the appellant as thieves and criminals. He also complains about evidence concerning a Cadillac automobile. There was no objection at trial to the evidence about appellant's acquaintances or about the Cadillac and whether it was stolen.

Appellant also complains about testimony concerning a Monte Carlo automobile which Mr. Fish, a witness, purchased from appellant. The Monte Carlo at the time of the trial was in possession of the highway patrol. The prosecutor asked Mr. Fish whether he had requested the highway patrol to return the Monte Carlo to him. The court overruled defense counsel's objection to the question and Mr. Fish replied that he had tried unsuccessfully to get the car back from the highway patrol. The court then sustained defense counsel's objection to a question by the prosecutor asking whether Mr. Fish had a lawyer hired to help recover the car.

These are the only specific instances of trial testimony which appellant objected to and which appellant sets out in his brief with transcript references. The rest of the argument in his brief on this point is general in nature and speaks to the rules of evidence pertaining to evidence of other crimes, about which there is no dispute.

■ The general rule is that proof of separate and distinct crimes other than the ones which have been charged is inadmissible. *State v. Warden,* 591 S.W.2d 170, 172[2–6] (Mo.App.1979). The rule, however, is laced with several exceptions. See generally *State v. Reese,* 274 S.W.2d 304, 307 (Mo. banc 1954). The exception which is relevant to the case under review is the allowance made for evidence of other crimes which tends to establish the accused's motive for the specific crime charged. See *State v. Franco,* 625 S.W.2d 596, 602[4, 5] (Mo.1981).

Whether evidence of other crimes falls within an exception to the general rule barring such evidence is determined by whether the evidence is logically relevant to the particular excepted purpose or purposes for which it is sought to be introduced. *State v. Reese, supra; State v. Knighton,* 518 S.W.2d 674, 679[4] (Mo.App.1975). Thus, this court must determine whether the evidence of appellant's activities relating to car theft is logically relevant to appellant's motive for the attempted car bombing.

The theory of the state's case was that appellant intended to murder Corporal Mertens by means of the car bombing in order to end Mertens' surveillance of appellant's premises. Had the state been limited to showing only that Mertens had placed appellant under surveillance, the state's theory would have sounded somewhat implausible because the jury could well have reasoned that an accused who is innocent of any wrongdoing would not take the extraordinary action of attempting to murder a law enforcement official who is conducting a legal surveillance. Proof that appellant was involved in car theft activities, however, would make the state's theory reasonable because a person who is engaged in criminal activities might very well want to murder a law enforcement official in order

to avoid detection. The evidence of other crimes was thus logically relevant to establish appellant's motive for the attempted car bombing. The point is denied.

■ Appellant's final point is general in nature and does not set forth any specific ruling of the trial court which is claimed to be error. The point relied on only says that the prosecution was intense because the victim was a member of the Missouri State Highway Patrol, that the case became a *cause celebre,* and that the prosecutor was guilty of misconduct and numerous and gross improprieties. The only case cited by appellant in support of his final point is *State v. Dunn,* 615 S.W.2d 543 (Mo.App. 1981) and he relies on the dissenting opinion in *Dunn.* The point must be denied.

The only incident which could be relied on by defendant to support a reversal based on his sixth point relied on is an exchange between the prosecutor, an FBI agent, and defense counsel. The FBI agent had come from Washington and had finished with his testimony when the prosecutor asked the defense in the presence of the jury whether the defense was going to have any experts or other people to challenge the tool mark identification testimony of the FBI agent.

Defense counsel responded, "Judge, we're not going to tell him anything." "He's·the one that's suppose to try to prove this case, and we're not going to do his work for him." The prosecutor then asked the FBI agent to stay whereupon defense counsel stated, "Now we're not going to ask you to stay Mr. Defenbaugh."

Defense counsel then requested a mistrial on the basis that the prosecutor improperly shifted the burden of proof to appellant to present evidence on his own behalf. The trial court denied the request for a mistrial and offered to instruct the jury to disregard the state's comments. The trial court then instructed the jury to disregard the prosecutor's questions to the defense concerning Mr. Defenbaugh's testimony.

The prosecutor's question about whether defense intended to challenge the tool mark identification testimony should not have

been asked, but the error was harmless and not a ground for reversal. *State v. Degraffenreid,* 477 S.W.2d 57, 64 (Mo. banc 1972). The defense did not challenge the state's proof that the bombing device had been constructed in appellant's body shop, but relied on the theory that it was produced in the body shop without appellant's knowledge.

■ The trial court instructed the jury to disregard the prosecutor's question although the court refused to declare a mistrial. A trial court has broad discretion in determining whether the drastic measure of declaring a mistrial should be taken and there was no abuse of that discretion here. See *State v. Healey,* 562 S.W.2d 118, 130[21–24] (Mo.App.1978).

Appellant alleges that taken cumulatively various alleged errors and heated incidents during the trial are grounds for a new trial. This court finds that the heated incidents when considered separately present no significant individual error and accordingly there is no cumulative error present to justify reversal. See *State v. Haynes,* 528 S.W.2d 11, 14 (Mo.App.1975).

The judgment is affirmed.

DOWD and KAROHL, JJ., concur.