**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Leonard Marvin LAWS,
Defendant-Appellant.**

**No. 46900.**

Missouri Court of Appeals,
Eastern District,
Division One.

March 20, 1984.

**236**

Timothy F. Devereux, Clayton, for defendant-appellant.

John Ashcroft, Atty. Gen., William K. Haas, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

SNYDER, Judge.

This is an appeal from a jury verdict and judgment convicting appellant Leonard Laws of capital murder. § 565.001 RSMo. 1978. Appellant was sentenced to life imprisonment without eligibility for probation or parole for fifty years. The judgment is affirmed.

Appellant contends the trial court erred in: (1) failing to declare a mistrial when Norman Gilmore testified that appellant had been in prison for the last nine years and when Robert Gilmore testified in effect, that he could not remember making a statement because he had five different murders on his mind; (2) failing to declare a mistrial when Norman Gilmore testified that he had not pled guilty to the homicide of the victim in the present case; (3) allowing testimony that George Gilmore had made statements about a plan to kill and rob old people and the death of the victim; (4) permitting a state's witness to testify about a statement made by appellant which concerned a crime not charged in this proceeding; and (5) admitting into evidence a .22 caliber rifle, two sawed-off shotguns along with testimony concerning these weapons because the weapons were not connected to the homicide for which appellant was tried.

The facts may be briefly stated because appellant does not contest the sufficiency of the evidence. George Gilmore, his brother Norman, and Leonard Laws on October 1, 1980 agreed to a plan to rob elderly persons as an easy way to make money. Pursuant to this plan, George, Norman, and Leonard on the night of October 7, 1980, decided to rob Woodrow Wilson Elliott, an elderly gentleman who lived alone and who had no legs and only one arm.

The trio drove to Mr. Elliott's house. When the old man answered the door, Laws kicked him, jumped on him and choked him into unconsciousness. The robbers then went inside and ransacked the dwelling. During the course of the robbery, Laws stabbed Mr. Elliott in the back of the head. After seizing a mason jar

containing $4,600, the two Gilmore brothers and Laws set fire to Mr. Elliott's home and made their getaway.

Mr. Elliott's body was burned so badly that it was difficult to determine the cause of death. The medical examiner's preliminary determination was death by fire. The cause of death was later changed to homicide, however, because of the low level of carbon monoxide present in Mr. Elliott's body. A person who had died by fire would have had a much higher saturation of carbon monoxide than Mr. Elliott had.

A more dastardly crime could scarcely be imagined. The perpetrators might never have been brought to justice, however, if Laws and George Gilmore had not had a penchant for telling others about the crime and the conspiracy. In front of a host of Gilmore's relatives, Laws demonstrated how he had stabbed Mr. Elliott, and laughing, said words to the effect that Elliott had had such a hard head that it bent his knife. Out of fear, Robert Gilmore, who was Norman and George's cousin, and Bob DeClue reported the incident to the police who then arrested Norman, George, and Leonard Laws.

Laws first contends that the trial court erred in failing to declare a mistrial when Norman Gilmore testified that Laws had been in prison for the last nine years and when Robert Gilmore testified that he had five different murders on his mind. Laws argues that these statements constituted prejudicial evidence of other crimes. The point is denied.

On cross-examination of Norman Gilmore, who had turned state's evidence, he was asked questions about Laws's background. Included were questions asking whether Laws was a veteran of the war in Vietnam. Objections were sustained to the questions about Laws's army career.

On redirect, the prosecuting attorney asked Norman, "Where did Leonard Laws tell you—the question the defense lawyer asked you—where did Leonard Laws tell you he spent the last nine years?" Norman answered, "In prison." The jury was instructed to disregard the answer, but the trial court denied Laws's motion for a mistrial.

The second evidence of other crimes which allegedly required the declaration of a mistrial occurred during cross-examination of Robert Gilmore. In response to a question by defense counsel about a prior inconsistent statement on deposition, Robert replied, "I've got five murders on my mind. You're trying to pick me out on one." The trial court instructed the jury to disregard this statement, but refused to declare a mistrial.

■ Evidence that the defendant has been in prison is evidence that the defendant has committed other crimes. See *Thomason v. State*, 115 Tex.Cr.R. 627, 27 S.W.2d 229, 230[3] (1930); I Wharton's Criminal Evidence § 240 (13th Ed.1972). Thus, Norman's statement that Laws had been in prison for the previous nine years is evidence of other crimes.

■ Evidence of crimes other than the crime charged is not admissible if it goes to proof of an independent crime and has no legitimate tendency to establish directly defendant's guilt of the crime charged. *State v. Williams*, 584 S.W.2d 134, 135[1] (Mo.App.1979). Norman's statement does not fall into one of the recognized exceptions to the rule excluding other crime evidence.

■ Arguably, Robert's five-murder statement did not constitute evidence of other crimes because Robert did not directly connect Laws to the other murders. The rule excluding evidence of other crimes does not apply where there is no evidence linking the accused with the other crimes. *State v. Hurst*, 612 S.W.2d 846, 855[29–33] (Mo.App.1981).

Norman's statement about Laws having served a prison term was not admissible. This court need not decide whether Robert's statement was admissible. Instead, the determinative issue is whether the trial court erred in denying Laws's requests for a mistrial after instructing the jury to disregard the statements.

The declaration of a mistrial is a drastic remedy which should be granted only in those circumstances when the incident is so grievous that the prejudicial effect can be removed in no other way. *State v. Parker*, 476 S.W.2d 513, 515–516[4–7] (Mo.1972). An appellate court reviews the trial court's decision not to declare a mistrial only for abuse of discretion. *Id.*

Ordinarily, the trial court acts within its discretion and cures error in the admission of evidence by withdrawing the improper evidence and instructing the jury to disregard it, rather than declaring a mistrial. *See, e.g., State v. Durham*, 418 S.W.2d 23, 27[7, 8] (Mo.1967) overruled on other grounds in *Guastello v. Department of Liquor Control*, 536 S.W.2d 21, 25[4] (Mo. banc 1976); *State v. Walker*, 46 S.W.2d 569, 570 (Mo.1932).

Appellant cites *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 1627–1628[10–12], 20 L.Ed.2d 476 (1968) for the proposition, which he argues is applicable here, that in some cases the risk that the jury will not or cannot follow the curative instruction is so great and the consequences of the jury's failure are so vital to the accused that a mistrial is the only permissible remedy. After consideration of all the evidence in this lengthy trial, this court holds that the instructions to the jury to disregard the questioned evidence constituted sufficient relief and that the trial court did not err in failing to declare a mistrial.

Appellant next contends that a mistrial should have been declared when state's witness Norman Gilmore testified that he had not pled guilty to the homicide of Mr. Elliott.

Norman Gilmore was an accessory to the murder of Elliott. In addition, he was a suspect in several other homicides. In exchange for Norman's testimony, the state promised him that he would receive lesser sentences than the sentences sought for George Gilmore and Leonard Laws. The

prosecuting attorney revealed the offer during a pretrial hearing.

Norman testified that he was offered a 15 year sentence for the Elliott murder and that he had pled guilty to the Franklin County murder and received a concurrent thirty-year sentence in exchange for his testimony.

The arguments urged by Laws in support of his second point relied on are based on the premise that the prosecuting attorney misinformed Laws's counsel by stating that Norman had already been charged with and pled guilty to the Elliott murder. This premise is false. Never did the state tell Laws or his counsel that Norman had been charged with the Elliott murder. The record reflects only that Norman was offered or promised a fifteen-year sentence in exchange for his testimony. No error occurred because of defense counsel's misunderstanding. Appellant's second point is denied.

In Laws's third point he charges trial court error in admitting hearsay testimony consisting of out-of-court statements made by George Gilmore. The point is without merit.

The first hearsay statement was made when Norman Gilmore testified that on October 1, 1980, George Gilmore said that he knew a way to make money "real easy"— by robbing and killing old people. Appellant Laws was present when Gilmore made the statements and agreed to participate in the robbery.

The first question is whether the statements were admissible under the co-conspirator exception to the hearsay rule. Statements of a co-conspirator made in furtherance of an unlawful combination are admissible against another co-conspirator. *State v. Garton*, 371 S.W.2d 283, 287–288[2] (Mo.1963). To meet the co-conspirator exception, the state was obligated to demonstrate, by evidence independent of Norman Gilmore's hearsay testimony, that a conspiracy existed between George Gilmore and Leonard Laws, at the time the

statements were made. See *State v. Reagan,* 654 S.W.2d 636, 640 (Mo.App.1983).

Without resorting to George's out-of-court statements, the state cannot show a conspiracy existed as of October 1, 1980. The only other evidence of a conspiracy consisted of a meeting between George, Norman, and Laws on October 7 to plan the Elliott murder, weapons purchased by the trio on October 8, and statements made by George in December 1980. Thus, the October 1 statement is not admissible as a statement of a co-conspirator because there is no independent evidence that the conspiracy existed on October 1.

 George Gilmore's questioned statement, however, is admissible as a statement adopted by Laws as his own. "One may expressly adopt another's statement as his own. That is an explicit admission like any other ..." McCormick on Evidence § 269 (2d Ed.1972); *see also State v. Joiner,* 559 S.W.2d 226, 227[3] (Mo.App. 1977). "Admissions by a party opponent are admissible either as an exception to the hearsay rule or because such admissions are not considered hearsay." *State v. Reagan, supra.* Laws agreed to George's suggestion to rob and kill old people, thereby rendering George's statement admissible as an adoptive admission.

 The second set of hearsay statements which Laws contends are inadmissible occurred during a conversation in December, 1980. George Gilmore discussed his idea of making money by robbing and killing old people, proposed Robert's participation in the scheme, and claimed he was doing the old people a favor by killing them. These statements were also testified to by Bobby DeClue, who stated George told him how Elliott had been killed.

By independent evidence, the state established a conspiracy between George, Norman and Laws to rob and murder elderly persons. The statements made by George on October 1, to which both Norman and Laws assented, and the evidence of the meeting on October 7 to plan the Elliott murder adequately establish a conspiracy.

The question is whether the conspiracy ended with the Elliott murder so that George's December statements were made after the conspiracy ceased to exist. "Once a common enterprise is ended, whether by accomplishment or abandonment, no one of the joint actors is permitted to affect the others by any subsequent act or declaration of his own." *State v. Browner,* 587 S.W.2d 948, 955[13–15] (Mo. App.1979).

The conspiracy was not limited to an agreement to kill only Elliott. Rather, the plan was a continuing conspiracy to rob and kill old people in general. At the inception of the conspiracy, George said that he knew an easy way to make money—by robbing and killing old people, not just Elliott. After the murder of Elliott, the trio purchased guns, arguably with the proceeds from the robbery, and George and Norman sawed off the barrels of their newly purchased shotguns. One may infer that the barrels were sawed off so that killing other old people would be made easier.

The December statements of George Gilmore were also adopted by Laws, although not expressly. During the conversation, Laws, who was present, did not deny George's statements, but instead chimed in with such comments as "Dead men don't talk" and laughingly said that when he stabbed Mr. Elliott in the head, it bent the blade on his knife.

From his failure to deny or contradict George and his participation in the conversation which tended to affirm the soundness of George's scheme, this court infers Laws's adoption of the statement. One may implicitly adopt a statement. *See e.g., State v. Hill,* 134 Mo. 663, 36 S.W. 223, 225[1] (1896); see also McCormick on Evidence § 269 (2d Ed.1972).

 In his fourth point Laws argues that the trial court erred in admitting Detective Savetz's testimony regarding an admission by Laws. Savetz testified, "Mr.

Laws indicated to me ... that he knew he was going to die for what he had done but that he was going to make me [Savetz] work for it." Laws argues that this testimony is evidence of other crimes because he had been arrested for three murders, the murder of Elliott and a double murder in Washington County, when he made the statement to Detective Savetz.

The statement of Laws, as Savetz related it to the jury, might have been evidence of other crimes had the jury known that Laws was under arrest for three murders when he made the statement. The jury, however, was never told that Laws had been arrested for the Washington County murders. Thus, the statement of Laws could lead only to an inference by the jury of consciousness of guilt of the murder of Elliott. The admission of appellant was therefore not evidence of other crimes.

For his final point, appellant maintains it was error to admit into evidence a .22 caliber rifle, two sawed-off shotguns and testimony concerning the weapons. Laws argues that this evidence was irrelevant because there was no evidence connecting the weapons to the homicide for which he was charged. This point, too, is denied.

The state's theory of the case was that the motive for the murder of Elliott was robbery. Norman Gilmore testified that the parties to the crime took between $4,600 and $4,800 from the crippled man's home. The state corroborated Norman's testimony by circumstantial evidence that before the murder of Elliott, all three were virtually penniless whereas immediately after the robbery the trio made several relatively large purchases, including used automobiles and the guns. Laws also made a large deposit of cash into his checking account.

The general rule for determining relevancy of evidence is whether it logically tends to prove or disprove a fact in issue or corroborates relevant evidence on a principal issue. *State v. Mercer*, 618 S.W.2d 1, 9[9–11] (Mo. banc 1981) cert. den. 454 U.S. 933, 102 S.Ct. 432, 70 L.Ed.2d 240 (1981).

The evidence of the purchase of the firearms was arguably relevant to the motive of the murder—to obtain money to buy guns to be used to carry out the scheme of the Gilmores and Laws to rob old people.

Whether evidence is relevant and material is an issue vested within the sound discretion of the trial court. *State v. Crespo*, 664 S.W.2d 548 at 552 (Mo.App.1983); *State v. Singleton*, 660 S.W.2d 13, 19[14] (Mo.App.1983). That discretion was not abused.

Leonard Laws, George Gilmore, and Norman Gilmore coolly and in cold blood conspired to rob and kill elderly persons because they would make easy prey. Woodrow Wilson Elliott, elderly, alone and handicapped, was perhaps the most helpless victim of an abhorrent, bloody and cruel spree of vicious murders. There was abundant proof of Laws's guilt and no reversible error.

The judgment is affirmed.

KELLY, P.J., and STEWART, J., concur.